(No. 13948.—Judgment affirmed.)

THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellee, *vs.* ISABELLA I. WALLACE, Appellant.

*Opinion filed October 22, 1921.*

1. EMINENT DOMAIN—*admission of evidence of sales of other property rests largely in discretion of court.* There is no fixed rule governing the admissibility, in a condemnation proceeding, of evidence of sales of other property which is alleged to be similar to the property being condemned, and whether such sales are of lands in the locality so similar in character to the land condemned as to make evidence thereof competent is a question largely within the discretion of the trial court.

2. SAME—*when evidence of sale of lots is not admissible.* In a condemnation proceeding, even though it is admitted that the best use to which the land can be put is to subdivide it into lots, the price received for lots in a tract already subdivided is not admissible upon the question of the value of the unsubdivided tract.

3. SAME—*sale price of lots in future subdivision of land is not a test of its value.* In a proceeding to condemn unsubdivided land, the sale price of lots in a future subdivision of the land is not a proper test of its value even though the best use of the land is for subdivision purposes.

4. SAME—*when plat of a subdivision of property is not admissible.* In a suit to condemn unsubdivided property, although it is conceded that subdividing into lots is the best use to which the land can be put, a plat made by a witness, showing a possible subdivision, is not admissible where there is no proof that the plat was recorded, that the property had been surveyed into lots, that the plat was contemplated or made before the suit was brought, or that it is to be an actual plat of the land.

5. SAME—*jury may be instructed to disregard fanciful or speculative estimates.* Where there is a great difference in the values placed upon the land by the testimony of the two sets of witnesses, the questions whether or not the values given by the defendant's witnesses are extravagantly high or those by petitioner's witnesses are ridiculously low are for the jury, and in such case it is not prejudical error to give an instruction for the petitioner that the jury should disregard any mere fanciful or speculative estimate of the value of the land made by any of the witnesses.

APPEAL from the Circuit Court of Cook county; the Hon. ANTON T. ZEMAN, Judge, presiding.

HENRY S. WILCOX, for appellant.

ADOLPH D. WEINER, EDWIN K. WALKER, and DON-
ALD S. McKINLAY, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Forest Preserve District of Cook county filed its
petition in the circuit court of Cook county to condemn for
its use a tract of 33.39 acres of land in the southwest quar-
ter of the southeast quarter of section 10, town 35, north,
range 14, east of the third principal meridian, owned by
Isabella I. Wallace, appellant. A trial was had and the jury
fixed the value of the property to be taken at $33,390.
Judgment was rendered on the verdict for said sum. Ap-
pellant prosecutes this appeal from the judgment.

The tract of land condemned is a part of a 100-acre
farm of appellant which she has owned for many years
and was being used as pasture land in connection with the
farm. It is adjacent to and just north of the city of Chi-
cago Heights. A public highway known as the Chicago
road, or Dixie highway, runs along the east side of the
land. Lincoln highway, also known as Fourteenth street,
runs east and west on the south boundary of the land. The
two highways are improved with cement roadways about
eighteen feet wide. A small stream known as Thorn creek
enters the tract near the southwest corner and flows through
it in a meandering line in a northeasterly direction and then
empties into Calumet river. About half of the land is low
and the other half high, the low land being west and north
of the creek and the high land south and east of it. The
high land is rough, there being a diversity in altitude of
over twenty feet. A little over half of the land is timber,
the wooded portion lying mostly south and east of the
creek. A part of this property at the northwest corner is
sometimes overflowed. By means of a storm-water sewer
storm waters from the territory to the west and northwest

discharge onto the land at the northwest corner and by means of a natural water-course flow over it into Thorn creek. The tract is very favorably situated for the purpose of subdivision into lots and the surroundings are such as to render it desirable for dwelling and business lots, but it has not been subdivided for such purpose and no special or urgent demand for dwelling or business lots there was shown to exist at the time the land was condemned.

On the trial the only question in issue was the amount of just compensation that should be paid to the owner for the tract so taken. It was conceded by both parties on the trial that the highest and best use to which the land was adapted was for the purpose of subdivision into dwelling and business lots. All the evidence offered by both sides as to the market value of the tract was offered upon this theory, only. Four expert witnesses testified for the petitioner as to the market value of the tract who had had years of experience in improving, subdividing into lots and selling similar property, and who were well acquainted with values of property in that vicinity and with the location and situation of this tract and its adaptability to being platted into lots and sold. Three of these witnesses testified that the reasonable market value of this tract of land for the purpose aforesaid was $1000 per acre, and the fourth placed the value of the land for such purpose at from $800 to $1000 per acre. All of these witnesses in giving their valuations considered not only the adaptability of the tract for the purpose aforesaid and the demand for lots, but also took into consideration the amount it would cost the owner to subdivide the land, grade and pave the streets and otherwise improve and prepare the property so the same would sell to the best advantage when platted. Their testimony shows conclusively that it would require a considerable outlay of money to prepare and plat the land for sale as lots. These witnesses appeared to be very fair in giving their testimony. They regarded the portion of the tract west

and north of the creek suitable for residence purposes and that part east and south of the creek suitable for business property. While it was shown in evidence that a sewer had been laid across the north end of this property, which the owners of this tract of land had the right to tap at the rate of $11 for each house tapping the sewer, it is further shown from the evidence that it would be necessary to install an inverted syphon, bridge, dam or other structure across Thorn creek to carry service pipes across and to the sewer, and that this would be at a considerable cost. It was also pointed out by the witnesses that the two cement roads are too narrow by three feet or more to accommodate the probable demands for traveling and for traffic over them, and if widened this would be at a considerable cost to the land owner.

In addition to the testimony of its four expert witnesses the petitioner offered evidence of four recent sales of property in the near vicinity of the property in question, which was suitable and actually purchased for the purpose of subdividing into lots. One of these tracts was a 20-acre tract located on Lincoln highway (or Fourteenth street) and west of the Wallace property a little less than half a mile and adjoining the corporate limits of Chicago Heights. This tract was purchased in June, 1919, for subdivision and was subdivided into lots. The purchase price for it was $300 per acre. The second tract was one of 120 acres, two blocks south and seven blocks west of the Wallace property and three blocks from the city limits and one block from the street car line, located at Western avenue and Sixteenth street. This tract was purchased in March, 1920, for the purpose of subdivision, at a price of $200 per acre. The third of the four tracts was a tract of about 32 acres on Sixteenth street in Chicago Heights, in Circuit Court addition, and the price paid was $250 per acre. The fourth tract was a 33-acre tract located on Sixteenth street in Chicago Heights, two blocks south and three blocks west of

the property in question. This tract was high, level land fronting on Sixteenth street, and was bought in February, 1919, for subdivision and was subdivided into lots. It adjoins the city limits and was purchased at a price of $750 per acre. No question is made in this court regarding the admissibility of evidence of any of these sales except that of the second tract, the objection being that no such similarity between that tract and the tract in question was proved as justified the admission of evidence as to that sale. This contention cannot be sustained. The proof in this record shows that the development of Chicago Heights in the last few years for residence purposes has been west and south and mostly along Sixteenth street. It is in this vicinity that most houses have been built in the last two years.

Appellant did not offer any evidence of sales of property. Her evidence was principally the testimony of four expert or opinion witnesses, who gave their opinions of the market value of her property for subdivision purposes and sale as lots. Her first witness was a resident of Crete, Illinois, whose place of business was in Chicago Heights and who had been in the real estate business for eighteen years. He examined the property for the purpose of ascertaining its fair cash market value and valued it at $78,000, basing his opinion upon its being adapted for subdivision purposes. He had never made a subdivision in Chicago Heights, and stated that he did not know how much cutting and filling would have to be done and had no figures on what it would cost to improve and prepare the tract for sale as lots; that he figured the marketing expense of such subdivision at about $20,000, and that about $32,000 more would have to be added to the cost of improving it for sale as lots. Her second witness, a resident of Chicago Heights, valued the tract at $75,000 for subdivision purposes. He stated on his examination that he did not know how much the grading would cost to prepare it for sale as lots, and did not know what sort of improvements would have to be

made in Dixie highway to make the land accessible for residence purposes or what it would cost to drain into the Twelfth street sewer. Her third witness had been in the real estate business for twenty years and had experience in handling property in and near Chicago Heights. He valued the property at $2500 per acre. He further testified that his subdivisions were out in the country about two and a quarter miles from the property in question and about a mile from Chicago Heights factories. The fourth witness was a farmer, who had made subdivisions in Glenwood, a village of about 400 population. He had been town assessor for twenty-five years in the town of Bloom. He valued the property at $2500 per acre, and stated that he did not take into consideration what would have to be done in improving the property in order to sell the lots.

The only other witness who testified for appellant was her son, Vernon T. Wallace, forty-five years of age, who had known the property all his life and was familiar with its surroundings and its contour. He had bought and sold lots and had become familiar with sales and subdivisions in Chicago Heights since and before 1912. He gave no opinion of the value of the tract, but testified that he and his mother had an arrangement with the city of Chicago Heights for the construction of the sewer across the north part of it, and a copy of that agreement was put in evidence by stipulation. He described the sewer as a fifteen-inch sewer at Twelfth street and a twelve-inch sewer at Edgewood avenue, and stated that it was used along Edgewood avenue by the inhabitants on March 26, 1920. He also testified that water backs up in the creek north of the old creek bridge during high water and at the Dixie highway bridge, and that after a heavy rain the water runs out of the sewer at the northwest corner of the land and flows down through it into the creek, but that the creek does not overflow the property. He also testified that he and his mother had been debating whether or not they would sub-

299—31

divide the property, and that he had prepared a plat of a possible subdivision of the property. This plat was offered in evidence by appellant and on objection was excluded by the court. The evidence did not show that this plat was authorized by appellant or that it was made before this suit was begun. There was no record of it and it was simply offered in evidence by appellant's attorney "as a possible plat of a possible subdivision for this property according to the ideas of this witness."

The petitioner offered evidence of six other recent sales of property in the vicinity of the property in question in addition to the four sales aforesaid. The admission of evidence of these six sales over the objections of the appellant furnishes the chief ground of complaint by her on this appeal. These were all recent sales of lands a half to a mile and a half from the property in question, and the prices paid for said lands ranged from $150 to $350 per acre. The $350 tract was a little over a half mile west of appellant's tract and was situated on Fourteenth street, or Lincoln highway, and was purchased at said price by a syndicate for subdivision purposes in 1918. All of the six tracts were farm lands. The evidence tended to show that all of the six tracts were favorably situated for subdivision purposes by reason of the fact that they were on or near one of the two cement highways running by the property in question, or on or near Sixteenth street or other streets in Chicago Heights and near street car lines. Two of the tracts most complained of by appellant and which sold at the lowest purchase price, were, first, a tract of 132 acres west of Chicago Heights, described as rolling land and which had been used for farm purposes. Twenty-sixth street, one of the important streets of Chicago Heights, passes through the middle of this tract, and the sale price was $175 per acre. The second tract was an 80-acre tract about a mile west of Chicago Heights, on the south side of the Twenty-sixth street road, and is described as level farm land with a little

timber, which sold for $150 per acre three years prior to this trial. A third tract which was purchased for $200 per acre about three years before the trial was a tract of 82½ acres located on both sides of Western avenue, about a quarter of a mile north of Lincoln highway and a mile and a half west of the property of appellant.

We do not think the court committed any reversible error in admitting testimony of the six sales of land complained of by appellant. The sole argument of appellant against the admissibility of evidence of these sales is based upon her statement that there is absolutely no similarity between those six tracts and the land of appellant, and she urges for that reason she was greatly prejudiced by such testimony. The similarity proved by appellee was that the six tracts were all farm lands and favorably situated for subdivision purposes. That was the character of proof as to appellant's land. Some of the six tracts had timber and some of them were not shown to have timber. They had no creek running through them. Great stress is laid by appellant upon the fact that some of her tract is timbered land and has a stream of "living water running through it." There is no proof whatever in the record that the creek is advantageous to the land for subdivision purposes or otherwise. The proof, on the contrary, rather tends to show that the creek is detrimental to the tract for subdivision purposes, and that it is one of the things that will cause a great deal of expense in preparing the land for sale into lots. There is no proof that the timber adds any special value to the land or that it is desirable to have the timber there for subdivision purposes. The proof is, merely, that the east part of the land is timbered. The character of the timber or the value of it does not appear in this record, and we are unable to see how the timber can in any way be advantageous to the land when subdivided into lots. Whether the six sales were of lands in the locality so similar in character as to make such sales competent was a question largely

within the discretion of the trial court. There is no fixed rule governing the admissibility of such evidence. (*City of Chicago* v. *Mullin,* 285 Ill. 296; *Forest Preserve District* v. *Kean,* 298 id. 37.) The jury, accompanied by a bailiff and the trial judge, viewed the premises before the taking of the evidence. There is no indication that the jury were influenced in the fixing of their verdict by the evidence of the sales of six tracts complained of, or the other four sales about the admissibility of which evidence there can be no question, as the land in question was valued by the jury at $250 an acre more than was paid by any purchaser in said ten sales. As before said, we do not think the court erred in allowing proof of said sales, but if it were conceded that the evidence of two or three of the sales proved by appellee should have been excluded by the court because having little or no probative force as to the value of appellant's land, we would still be unable to conclude that appellant was prejudiced thereby and that this judgment ought to be reversed for that reason. On the contrary, after considering the whole record we think the judgment ought to be affirmed.

Complaint is made that the court was unfair to appellant in its rulings on the cross-examination of the witnesses Donovan and Schilling, who testified for appellee. There was no reversible error committed in this regard. Appellant's main complaint is that the court refused to allow her to have these two witnesses state the price at which they sold lots out of land that had been subdivided. These witnesses valued the land of appellant, one of them at $1000 and the other at from $800 to $1000 per acre. Appellant was not entitled to have the witnesses state such price. Lands which are subdivided into lots, or the lots from such lands after subdivision, are not similar to or similarly conditioned as unsubdivided or acre property like appellant's, and the price of such lots was not material in fixing the value of her tract and should not have been admitted. (*Martin* v. *Chicago and Milwaukee Electric Railroad Co.*

220 Ill. 97.)   The court did err in refusing to allow these two witnesses to testify as to how many lots they had sold and as to how many lots remained unsold in certain additions.   These witnesses had testified, in substance, as affecting the value of land subdivided into lots, that the sale of lots had been very slow in the last two or three years before the trial.   It was, however, not reversible error, as the record clearly shows that there had not been very much doing in the way of subdividing land and selling lots in that vicinity within the time mentioned.

Appellant also complains of the court's action in refusing to admit in evidence a plat by Vernon T. Wallace of a proposed subdivision of appellant's property.   As has already been disclosed that plat was not of record, and the land was not surveyed into lots according to that plat, and there is no certainty that it will be or become an actual plat of that land.   It is not even shown that a plat was contemplated or made before suit was brought.   The court did not err in excluding this plat.   A very similar ruling was sustained by this court in *Sexton* v. *Union Stock Yard Co.* 200 Ill. 244.

The court did not err in giving the ninth and tenth instructions for appellee.   The substance of the ninth instruction was, that the jury should disregard any mere fanciful or speculative estimate of the value of the land made by any of the witnesses, if they believed from the evidence that any of the estimates were fanciful or speculative.   This instruction did not single out appellant's witnesses by name, and we are not prepared to hold that the giving of it was reversible error because not based on evidence or applicable to this case.   There was a very great difference in the values placed upon this land by the testimony of the two sets of witnesses, as is most always the case in the trial of condemnation cases.   Whether or not the values of appellant's witnesses were extravagantly high or those of appellee's witnesses were ridiculously low were questions for

the jury, and we do not think the court erred in giving the jury this cautionary instruction and leaving for them to determine which set of witnesses were reasonable or the more reasonable in their estimates. *Spohr* v. *City of Chicago,* 206 Ill. 441.

The tenth instruction for appellant properly stated to the jury, in substance, that the test of the value of the property in question was not the sale price of lots in any subdivision that might in the future be made of the property.

There is no reversible error in this record, and the judgment is affirmed.

*Judgment affirmed.*