(No. 31425.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* THE CHICAGO TITLE AND TRUST COMPANY *et al.*—(ARTHUR T. GALT *et al.*, Appellants.)

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

42

Gunn, J., dissenting.

Bernard M. Decker, and J. E. Bairstow, both of Waukegan, and Frank E. Wardecker, of Chicago, for appellants.

Ivan A. Elliott, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and James C. Murray, all of Chicago, of counsel,) for appellee.

Mr. Justice Daily delivered the opinion of the court:

The Department of Public Works and Buildings of the State of Illinois filed its petition in the circuit court of Lake County to condemn, for park purposes, to-wit: the

Illinois Beach State Park, three tracts of land, an undivided one-half interest of which belonged to the appellants, Arthur T. Galt and Ida Cook Galt. A jury returned a verdict finding the fair cash value of the respective tracts to be: $98,325 for a 207-acre tract in Benton Township; $7622 for a 38.11-acre tract in Waukegan Township; and $31,538 for a 48.48-acre tract also in Waukegan Township. The court entered judgment directing the petitioner to pay $68,990.36 to the county treasurer for the benefit of the Galts as full compensation for their undivided one-half interest. The Galts appeal from that order. We shall hereafter refer to them as appellants, and to the petitioner-appellee as the Department.

Appellants have made numerous assignments of error which fall into two broad classes. First, those which assert that the legislature has not, by appropriate legislation, delegated the power of eminent domain which the Department asserts in this case; and, second, those which relate to errors alleged to have occurred during the trial of the condemnation proceedings.

The original petition filed by the Department failed to allege any statutory authority as a basis for its right to maintain a condemnation proceeding, nor did it refer to any act of the General Assembly. establishing an Illinois Beach State Park. Subsequently, an amended petition recited that the land sought was in accordance with the Department's plan for the development of the Illinois Beach State Park for which 1100 acres had already been acquired, and for which approximately 2100 more adjoining acres were to be acquired in the immediate future. The amended petition based the right of the Department to condemn on section 2 of an act in relation to the acquisition, control, maintenance, improvement and protection of State parks, as amended in 1931, (Ill. Rev. Stat. 1949, chap. 105, par. 466,) commonly referred to as the State Parks Act. It is appellants' contention that the grant of power of eminent

domain contained in the State Parks Act has no vitality without legislation prescribing the terms and conditions upon which it is to be exercised. It is their claim that the legislature must further pass an enabling act which creates and names the park and describes its purpose, site and size, before the Department may validly exercise the power of eminent domain referred to in section 2 of the State Parks Act. In the alternative it is contended that if section 2 be construed as granting the power of eminent domain without a further enabling act, the said section is unconstitutional under section 13 of article IV of our constitution, in that the act embraces more than one subject, and that the subject of the act is not expressed in the title.

The aforesaid section 2, as amended in 1931, reads in part as follows:

"Sec. 2. It shall be the policy of the State of Illinois to acquire a system of State parks which shall embody the following purposes and objectives:

"(1) To preserve the most important historic sites and events which are connected with early pioneer or Indian history, so that such history * * * may be preserved, not only as a tribute to those who made possible the building of the State of Illinois and of the Union, but also as a part of the education of present and future Illinois citizens.

"(2) To set aside as public reservations those locations which have unusual scenic attractions caused by geologic or topographic formations, such as canyons, gorges, caves, dunes, beaches, moraines, palisades, examples of Illinois prairie, and points of scientific interest to botanists and naturalists. * * *

"(3) To preserve large forested areas and marginal lands along the rivers, small water courses, and lakes for a recreation use different from that given by the typical city park, and so that these tracts may remain unchanged by civilization, so far as possible, and be kept for future generations. * * *

"(4) To connect these parks with each other by a system of scenic parkways with widths varying from 100 to 1,000 feet as a supplement to and completion of the State highway system. * * *

"The Department of Public Works and Buildings is authorized in behalf of the State of Illinois to accept by donation or bequest, to purchase or acquire by condemnation proceedings under the Eminent Domain Act, or in any other legal manner, the title to all such lands, waters or regions, and the easements appurtenant or contributory thereto, which shall be in accord with such policy in respect to a system of State Parks, for the purpose of which the General Assembly may make an appropriation."

Appellants' argument that the authority to condemn, referred to in the foregoing statute, lies dormant until there is a further enabling act is based to a great degree on the fact that the formation of many of our State parks has been bottomed on an act of the legislature, which has designated the name, site, boundaries and purpose of the park, and has usually made the appropriation for purchase of the land. (Starved Rock State Park, Laws of 1911, p. 57; Blackhawk State Park, Laws of 1927, p. 46; and Wolf Lake, Laws of 1945, p. 204.) There is no question but what the power to create State parks lies with the General Assembly. It is equally well settled that that body may, in some instances, delegate its powers to an administrative agency, as long as it does not invest such agency with arbitrary powers, or delegate its general legislative authority. Among those powers which may be delegated is the power to select and condemn real estate for public purposes. (*Loomis* v. *Keehn,* 400 Ill. 337; *People ex rel. Curren* v. *Schommer,* 392 Ill. 17; *Mitchell* v. *Lowden,* 288 Ill. 327.) It is for the courts to decide whether the statutory conditions authorizing the exercise of the power of eminent domain exist. (*Bierbaum* v. *Smith,* 317 Ill. 147.) Section 2 of the State Parks Act states unqualifiedly that the

Department of Public Works and Buildings "is authorized in behalf of the State of Illinois to accept by donation or bequest, to purchase or acquire by condemnation proceedings under the Eminent Domain Act, or in any other legal manner, the title to all such lands, waters or regions, and the easements appurtenant or contributory thereto, which shall be in accord with such policy in respect to a system of State Parks, for the purpose of which the General Assembly may make an appropriation." It cannot be doubted but what this language of itself delegates the power to condemn lands for a public purpose to the Department without further enabling legislation.

By delegating this power to the Department, the legislature has not stripped itself of its right to create State Parks by a direct act, and the fact that it has done so since the enactment of section 2, and will no doubt do so in the future, is not, as appellants contend, a limitation on the power delegated to the Department. Generally speaking, we now have two ways in which a State park may be created. The legislature may act of its own volition, or the Department may act by virtue of the authority delegated to it. In either case it is necessary that the General Assembly appropriate funds to acquire the lands. That it was the intention of the legislature to invest the Department with such power is borne out to a certain extent by the fact that section 2, as amended in 1931, (Laws of 1931, p. 721,) omitted the provisions which had previously made it necessary for the Department to investigate land to be used for a State park and make a report on the advisability of its acquisition to each session of the General Assembly. Cahill Ill. Rev. Stat. 1929, chap. 105, par. 548.

The contention that the legislature must in each instance determine if land to be condemned for a park is for a public purpose cannot be sustained. It is true that the determination of what is for the public good and of what are public purposes are questions to be decided in the first

instance by the General Assembly. (*Cremer v. Peoria Housing Authority*, 399 Ill. 579.) By the State Parks Act the legislature has declared that parks for the preservation and setting aside of certain enumerated sites are for a public purpose, and the Department has been delegated authority to condemn only land which serves that purpose. If they do not, or if their discretion is questionable, landowners are not without their remedy in our courts, which are the final arbiters as to whether a given use is a public use. (*Poole v. City of Kankakee*, 406 Ill. 521; *Zurn v. City of Chicago*, 389 Ill. 114.) No contention is made in this case that the use for a park is not a public purpose.

To further support their contention that a further enabling act is needed, appellants rely on *Village of Depue v. Banschbach*, 273 Ill. 574, and *Decatur Park Dist. v. Becker*, 368 Ill. 442, wherein we held that when the legislature delegates the power to establish local parks, a valid enabling ordinance lies at the foundation of the proceeding. The present situation is not analogous, for a municipal corporation acts by ordinance, whereas the Department of Public Works and Buildings in the instant case need only act in accordance with the act of the General Assembly. We conclude that under the State Parks Act, as amended, it is not necessary for the General Assembly to enact enabling legislation as a prerequisite to the Department's power to condemn specific real estate, and the absence of such enabling legislation does not cause the action brought to be violative of the due process clauses of our State and Federal constitutions.

This brings us to appellants' alternate contention, that section 2 of the State Parks Act, as amended in 1931, is void because its provision is not embraced in the title, and because the act now embraces more than one subject, contrary to section 13 of article IV of the constitution. Their whole argument in this respect is based on the assumption made in their first assignment of error, that some additional

legislation or act is required to establish or create a State park. They claim that the power now delegated to the Department is not embraced within the scope of the title or in the subject matter of the section prior to amendment. Both the original title and the title of the amendment are shown in the amendatory act, as follows: "An Act to amend section 2 of 'An Act in relation to the acquisition, control, maintenance, improvement and protection of State Parks' approved June 26, 1925, as amended." Appellants treat the original title as a restrictive title and insist that it is now subject to their objections because it was not amended to include the word "establishment" along with the words "acquisition, control," etc.

The title of the original act clearly informs that it relates to the general subject of property to be acquired for State parks, and to that single subject alone. The constitutional provision that no act shall embrace more than one subject, which shall be expressed in the title, is intended to require the title to give information of the legislation with which the act deals, but particulars of the legislation are to be found in the body of the act, not in the title. (*Riggs* v. *Jennings,* 248 Ill. 584; *People* v. *Horan,* 293 Ill. 314.) The title need state only the general purposes and not the legal effect of the statute. (*Scott* v. *Freeport Motor Casualty Co.* 379 Ill. 155.) The title need not contain all the details of the act, or be an index to its contents, but need only set out, generally, the subject matter. (*Malloy* v. *City of Chicago,* 369 Ill. 97.) The subject of an act, within the constitutional requirement, signifies the matter or thing forming the groundwork of the act. (*Mammina* v. *Alexander Auto Service Co.* 333 Ill. 158.) Every act must embrace but a single subject, but it may include provisions which are not foreign to the general subject and which legitimately tend to accomplish the legislative purpose with reference to the general subject. (*People* v. *Joyce,* 246 Ill. 124.) To render a pro-

vision in the body of an act void, as not embraced in the title, such provision must be incongruous with, or must have no proper connection with or relation to, the title. Where the title of an original act is repeated in the title of an amendatory act, the amendatory act is as broad and comprehensive as the act amended, and any provision which might have been inserted in the original act may be inserted in the amendatory act without violating the constitutional provision that the subject of the act be expressed in the title. (*Malloy* v. *City of Chicago,* 369 Ill. 97; *City of Evanston* v. *Wazau,* 364 Ill. 198; *Michaels* v. *Barrett,* 355 Ill. 175.) The title to the original act, in the present case, related to the acquisition and control of lands for State parks and, measured by past decisions, was sufficient to meet the constitutional provision. When the legislature, by the 1931 amendment, delegated the power to the Department to acquire lands by eminent domain without the necessity of making a report, the provision was within the scope of the subject and could properly have been included in the original act. The amendment relates to the same subject matter as the original act. It is therefore not void nor has it created the necessity of enlarging the title of the act to include the word "establishment."

Appellants next make the contention that the State Parks Act is void and unconstitutional because the language which gives authority to condemn lands which have "unusual scenic attractions" is vague, indefinite and uncertain. This question was not presented to the trial court and on appeal will not be considered. It is a well settled rule that a constitutional question cannot be presented in this court for review unless it was presented to the lower court for its determination. (*Zelney* v. *Murphy,* 387 Ill. 492.) The record of the circuit court must disclose in some manner that such a question was presented to it for its determination before it can be raised in this court. (*Odin Coal Co.* v. *Industrial Com.* 297 Ill. 392; *Savoy*

*Hotel Co.* v. *Industrial Board,* 279 Ill. 329.) The record here fails in this respect.

A further contention is made that the trial court should have dismissed the petition because the Department failed to prove the existence of the jurisdictional facts. Appellants made a motion to dismiss the petition, thus traversing the allegations that appellants' property met the requirements of the State Parks Act, placing the burden on the Department to establish the jurisdictional facts by competent evidence. (*Bierbaum* v. *Smith,* 317 Ill. 147.) The evidence presented disclosed that the largest of the tracts in which appellants had an interest bordered on Lake Michigan between two tracts previously acquired by the Department for the Illinois Beach State Park. The other two tracts sought from appellants had no lake frontage but did enlarge strips of lake frontage already acquired by the Department. The evidence likewise indicated that the acquisition of appellants' property fits in to the orderly plan of acquiring 2000 contiguous acres of lake front property for the beach in question. We agree with the trial court that the Department made a *prima facie* case, and since appellants did not support their motion with contrary evidence, the motion was properly overruled.

In the second class of errors raised by appellants, it is contended that the court erred in admitting certain exhibits into evidence, in admitting evidence as to other sales, in allowing direct testimony in rebuttal, and in its instructions to the jury. The exhibits complained of were three contour maps which had been colored in certain areas with crayons and were used by appellee's witnesses to show what portions of appellants' property were under water, what portions might be subject to flood from the Dead River, and what portions of the property were on or above the feasible building plane. Uncolored contour maps of the same areas had previously been introduced into evidence, and it is appellants' contention that the colored

maps were merely self-serving exhibits which had the effect of unduly enlarging the testimony given by appellee's witnesses. Plats, photographs, drawings and diagrams, which illustrate the subject matter of testimony, may be received into evidence for the purpose of showing a particular situation, explaining the testimony or enabling the jury to apply the testimony more intelligently to the facts shown. (*Smith* v. *Sanitary Dist.* 260 Ill. 453.) All of the data shown by the colored exhibits were matters to be taken into consideration by the jury in a case of this nature. We do not see that they did more than explain testimony of a somewhat technical nature and assist the jury in its determination of the facts. The court did not abuse its discretion in allowing the exhibits into evidence.

Appellants contend that if the foregoing exhibits were properly admitted, then the court erred in refusing to admit aerial photographs offered by appellants. The court denied their admission on the ground that since the jurors had seen the terrain, the aerial photographs would add nothing to the jurors' own view of the premises. While such exhibits might properly have been admitted under the rule of the *Smith case* related above, it was still a matter within the discretion of the court, and its failure to do so is not such an error as to warrant reversal of the judgment.

Objection is also made to the court's action of allowing the Department to introduce evidence of the sales of other property in the vicinity for residential purposes. Appellants maintain that these tracts did not have physical characteristics or location comparable to that of their property, and that there is no evidence that the other properties could be adapted to the same purpose for which appellants' property was being condemned. The testimony as to the value of these properties was properly admitted in support of the Department's theory that the highest and best use of the Galt property was for residential purposes. Should

the jurors disagree with this theory, they would, of course, disregard the testimony of the price for which these tracts sold, and they were so instructed by the court.

The matter of the trial court allowing a witness to testify in rebuttal, whom appellants claim should have been called as a witness in chief, will not be considered in the absence of any showing of abuse of the court's clear discretion in the matter.

Given instruction 19 is challenged on the ground that the word "comparability" used therein amounts to a mandatory direction to the jury to consider certain other property as comparable to that of appellants and ignores the dissimilarities between the properties. The word "comparable" is defined as "capable of being compared (with); worthy of comparison," (Webster's New International Unabridged Dictionary, Second Edition,) and thus must necessarily include dissimilarities as well as similarities. There is no merit in the contention.

The court refused to give appellants' instruction 27 which said: "The owners of the property called Tract No. 1, which is being taken through this suit, have had at all times in question, and now have, a right to ingress to and egress from their property to the Beach Road. Insofar as these rights affect the value of Tract No. 1, these rights should be taken into consideration by you in arriving at your verdict." When the trial judge refused this instruction he stated that he had not made a finding that there existed a *right* of ingress and egress to this parcel. An examination of his preliminary orders bears this out, for the finding was simply that appellants had ingress and egress, with no reference whatsoever to a right. Ingress and egress are defined as places or means of entering or leaving property and may mean only the physical ability to perform such acts from the condition of the adjoining terrain. It is only an easement or right of way established by grant or user and appurtenant to the land condemned,

resulting in a property interest, that is taken into consideration in fixing the value of the property taken. The instruction was properly refused.

From a consideration of the entire record, we are of the opinion that the Department had the authority to prosecute the proceeding and that there was no reversible error in the trial of the cause. The judgment of the circuit court of Lake County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GUNN, dissenting:

I cannot agree that the General Assembly has delegated to the Department of Public Works and Buildings the power to acquire land which in its judgment has unusual scenic attraction by eminent domain proceedings, when its acquisition has not been authorized by the State, and a specific appropriation made to pay for it. The statute declares a public policy and designates an agency to carry it out, but does not authorize the Department to make the selection, nor does it authorize eminent domain proceedings unless an appropriation is made. How can a court make an order fixing a time for payment as required by law when no fund is provided from which to pay it? And if it is assumed the owner can be required to wait until the General Assembly has acted, then we have allowed the Eminent Domain Act to be amended contrary to the constitution. The uniform practice heretofore has been for the State to select the site and the Department to carry out its purpose as its agent. The present opinion opens wide the door to acquiring land for park purposes, depending entirely upon the artistic predilections, or the historic inclinations, of the head of the Department. The statute does not go this far.