THE DEPARTMENT OF CONSERVATION, Petitioner-Appellee, *v.* THE FIRST NATIONAL BANK OF LAKE FOREST *et al.*, Defendants-Appellants.

Second District (2nd Division) No. 75-145

Opinion filed March 16, 1976.

Donald T. Morrison, of Morrison & Nemanich, of Waukegan, for appellants.

William J. Scott, Attorney General, of Chicago (Frank S. Righeimer, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:
This is a condemnation action under the Eminent Domain Act to

acquire 80 acres of vacant, unsubdivided, unimproved land, in Lake County, for open space purposes. The petition was filed October 16, 1973. The case was tried before a jury which viewed the property and returned a verdict of $152,000 ($1900 per acre). Petitioner's only testimony as to value was $128,000 ($1600 per acre) plus evidence of "similar sales" at $1,000 per acre. Defendant's high testimony was $240,000 ($3000 per acre) plus evidence of similar sales at $2560 per acre and $2800 per acre. Defendant has appealed contending that the usual rule of not disturbing a condemnation verdict where the verdict is within the range of evidence does not apply because of error by the trial court in the admission and exclusion of evidence and the giving and refusal of instructions. The issues presented are, did the trial court err:

    I. in excluding defendant's land development feasibility study,

    II. in excluding evidence based on a reasonable probability of rezoning,

    III. in admitting sales of similar properties,

    IV. in admitting "Soil Survey Maps" as public records without proof of accuracy,

    V. in instructing the jury,

    VI. in basing its rulings on the evidence on absence of development of adjacent property, which did not develop because it had been condemned by the State,

    VII. in not granting a new trial where a juror answered falsely on voir dire.

Appellant's property is an 80-acre tract of land mostly vacant, improved only with a frame farmhouse type building located in Grant Township, Lake County. Prior to 1968 the property was used as a dump for refuse and old equipment of the Wing and Fin Hunt Club. Since 1968 it was used for a time as a dog club.

The topography of the property is hilly with 25-30% of it being low land.

The property is located in an unincorporated area of Lake County, 2½ miles south of Fox Lake; 3½ miles east of McHenry; 3½ miles west of Round Lake; 1 mile north of Volo. It is rectangular in shape, having 1,320 feet of frontage on the north side of Sullivan Lake Road, with a depth of 2,640 feet. The property has no sewer, no water, no gas, nor does it have any municipal services. It is zoned county agricultural, which allows one single-family residential on 200,000 square feet, or slightly less than 5 acres.

The soil conditions in the immediate area of the property are heavily influenced by two bogs—the Volo Bog, which is adjacent to the subject

property on the west. at the southern 40 acres, and the tip of which extends into the property itself, and the Wilson Bog, which is located northwest of Brandenberg Road.

Areas would be unsuitable for building, either because of poor soil or because of the flood plain. There is a large area of flood plain in the northeast extending to the lot line; there is a flood plain in the northwest section shaped like a hockey stick; there is flood plain along the west property line in the southern quadrant. Approximately 25% of the subject property is unsuitable for foundation footings.

Borings taken showed that the property had an extremely high water table in many areas.

The evidence showed further that the soil conditions in 44% of the property indicate severe (13%) or very severe (31%) limitations on the installation of septic systems, either because of the organic matter or poor permeability. No septic field could be located within 25 feet of the flood plain area, thus further expanding the area which would be unusable.

The area surrounding the property is predominately farm land. To the north is the Bauer farm, which now has scattered gravel mining; to the immediate west is the Volo Bog, a tamarack swamp; further west is farmland; to the east is farmland; to the south and west is a conglomeration of rezonings, called the Krilic property, which property was rezoned in 1968 with the requirement that community sewer and water be furnished on site. The only improvement on the Krilic property was some work done around 1971 on a projected golf course, which work has since been stopped. The condemnation by the Department of Conservation of Krilic's northern 175 acres may be the cause of the non-development.

The property is completely surrounded by agricultural uses except for a few scattered homes on Brandenberg Road and a dog kennel across Sullivan Lake Road. There is no development trend in the immediate area; only one new home having been built since 1971, and one large barn having been remodeled into a home. Valmar Woods Subdivision, located immediately west of McHenry, consisting of 44 one-acre wooded lots, was platted 5 years ago, and since then only about one-half of such lots have been sold. Another subdivision located just east of McHenry, consisting of 138 lots and 27 houses, was recently appraised by Mr. Curtis for the First Wisconsin Mortgage Company for foreclosure purposes. All attempted development, none of which has been successful, is located adjacent to McHenry. The Lake County real estate market is glutted with farm properties, the office of one broker alone having

240 to 250 farm properties listed, with 7 or 8 of those being in Grant Township, and 10 to 12 in Wauconda Township.

## I.

■■ Defendant argues that there was somehow some unfairness about the State's theory that the property was unsuitable for development because of the low areas on the property and because of the soil conditions which would indicate that the property could not be developed without external sewer and water because the soil would not admit installation of septic systems. It has, however, long been the rule that parties to a condemnation proceeding have the right to adopt their own theories as to the highest and best use of the land taken and each may introduce competent evidence without being bound by the theory of the other. (*Union Electric Power Co. v. Sauget,* 1 Ill. 2d 125, 130.

In order to combat the State's theory defendant has prepared their proposed Exhibit 4, a plat of a subdivision feasibility study, designed and offered for the purpose of showing that the property could be developed for one-acre single-family residences. The trial court refused to admit defendant's Exhibit 4.

In *Forest Preserve District v. Wallace,* 299 Ill. 476, 485 the Supreme Court affirmed the trial court's decision to exclude from evidence the defendant's proposed plat of subdivision showing the property subdivided into buildable lots. The court pointed out where (1) the plat is not of record; (2) where the land has not been surveyed into lots according to the plat; (3) where there was no certainty that it would be so surveyed or become an official plat; and (4) where it is shown that the plat was not contemplated before suit was brought, the plat should be rejected.

In the instant case defendant's plat (1) was not of record; (2) the land had not been surveyed into 1 acre lots; (3) there was no evidence that it would be surveyed or become an official plat; and (4) the plat was obviously prepared for trial. The trial court did not err in excluding this exhibit. Also, see *Sexton v. Union Stock Yard & Transit Co.,* 200 Ill. 244; *Martin v. Chicago & Milwaukee Electric R.R. Co.,* 220 Ill. 97; *Department of Public Works & Buildings v. Lambert,* 411 Ill. 183; *Park District v. La Salle National Bank,* 36 Ill. App. 3d 146.

## II.

The trial court also refused to admit the testimony of defendant's planner and of the engineer, that the subdivision development was feasible from an engineering standpoint and had a reasonable prob-

ability of rezoning. The exclusion was based on the trial court's conclusion that there was no reasonable probability of rezoning the property from AG to single-family residential of the type shown on the plat. The following colloquy occurred:

"The Court: * * * Are any of your appraisers supposedly taking into consideration as a factor in their appraisal the reasonable probability of rezoning?

Defendant's Attorney: None of our appraisers have a value that is based upon, or necessarily based upon reasonable probability of rezoning. * * *

The Court: * * * What I am interested in is simply is that a factor in the case. I gather it is not.

Defendant's Attorney: It is not as far as their valuation is concerned."

None of defendant's appraisal witnesses based his opinion on the reasonable probability of rezoning, nor did they have an opinion of highest and best use which reflected rezoning.

Since rezoning will add nothing to the value of the condemned property unless there is a market demand for the higher use, a showing of enhanced value stemming from a probable change in zoning is generally held a prerequisite to the consideration of the probability of such a rezoning. Annot., 9 A.L.R.3d 291, 312 (1966).

■■ Possible rezoning is relevant only if it reflects some value in the land because of a present capacity for future use which may be anticipated with reasonable certainty and which may be made the basis of an intelligent estimate of value. *Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill. App. 2d 1, 6.

The issue of rezoning is relevant only if it has some effect on the fair, cash market value of the property in question. In the instant case defendant's valuation witnesses did not feel it was relevant and did not base their opinions of value on rezoning. The trial court had no choice but to exclude evidence of reasonable probability of rezoning.

### III.

The State was permitted to introduce into evidence the sale [1] of a 276-acre tract sold to Carl Klehm in 1969 for $1000 per acre. This property adjoined the north 40 acres of the subject property and had a frontage on both sides of Brandenberg Road. 75% of the Klehm property

---

[1] The State also offered the sale of the subject property in December 1968 to defendant for $65,000. The court refused admission on the ground that its admission would prejudice the jury against defendant.

was farmed. It was adjacent to Volo Bog and adjacent to three single-family residences on Brandenberg Road. It was zoned agricultural with no sewer or water available. The State was also permitted to introduce the sale of the 94-acre Roski farm. This tract was adjacent to the Klehm property northwest of the subject property. It had frontage on Big Hollow Road; was 40% swampy. It sold in 1969 for $1000 per acre. It was zoned agricultural. An appraisal witness testified that the difference between the prices paid in the Klehm and Roski sales and that of his valuation for the condemned property could be explained by inflation in the ensuing years.

■■ Defendant contends that the trial court improperly exercised its discretion in admitting these sales over objection of defendant. Defendant cites *Forest Preserve District v. Collins,* 348 Ill. 477, 481, where the Supreme Court affirmed the trial court's ruling excluding evidence of a sale made January 24, 1925, for $3750 an acre. The petition to condemn was filed April 24, 1930. The evidence in that case showed that in 1925 there was considerable demand for acreage property for subdivision purposes at a good price but by 1930 there was very little demand and prices had decreased considerably. The jury had fixed the price at $600 per acre.

The identical argument was raised in *Department of Business & Economic Development v. Baumann,* 9 Ill. App. 3d 1, 9, *rev'd on other grounds,* 56 Ill. 2d 382, where this court recognized the holding of *Forest Preserve District,* "where there has been a great change in land price between the time the comparable properties had been sold and the time that the petition to condemn had been filed, evidence of the comparable sales is inadmissible." This court found there was contradictory evidence as to whether a *great change* had occurred in the price of realty in the area and stated, "It was the function of the trial judge to resolve these inconsistencies."

In the *Forest Preserve District* case, over 5 years and the great depression had intervened before the petition to condemn was filed. The similar sale was for over six times the current valuation. The circumstances were such that that sale could not reflect ordinary present value.

Did the sales here in question *reflect ordinary present value?* The State's lowest appraisal in this case was $128,000 and the State had appraisals (which they did not use) of $144,000 and $160,000. The sales represented a value of $80,000. Did they have some bearing on the value under consideration? Is a minimum change of $68,000 a great change? While the determination rests largely in the discretion of the trial court (*County of Cook v. Colonial Oil Corp.,* 15 Ill. 2d 67), that discretion is not unlimited. (*City of Evanston v. Piotrowicz,* 20 Ill. 2d 512; *Forest*

*Preserve District v. Kean,* 298 Ill. 37, 47.) The trial court here recognized the problem, stating, "* * * If there has been a change or increase or decrease of a substantial amount * * * it will not be let into evidence * * *. It's a close one. In fairness I am going to keep out the sale of the property in question [to defendant]. I am going to let the two other comparables in."

Without doubt the admission of the comparables had an influence on the jury. The State would not otherwise have offered them. Righeimer in Eminent Domain in Illinois §5.044 (2d ed. 1972) states, "The most effective evidence in a condemnation proceeding is evidence of * * * the sales of similar property in the immediate neighborhood. The opinions of real estate men as to values are, after all, only opinions and often vary widely. Sales evidence furnishes a yardstick with which to test such diversified opinion evidence." Foran in 1966 U. Ill. L.F. 69, 80-81, states, "Perhaps the most probative and effective evidence of market value lies in the evidence of actual sale prices of property. * * * Its probative worth as evidence of market value generally is significantly greater than a mere opinion and, in addition, the sale affords a standard for evaluating the opinion testimony."

The Law of Eminent Domain §21.31(2) (3d ed. 1975), 5 Nichols, citing *Forest Preserve v. Collins* and other cases says, "A sale of neighboring land, no matter how similar to the land taken, is not admissible unless the sale was so near in point of time as to furnish a test of present value * * *." He further states, "Remoteness in point of time, however, will condemn the evidentiary value of a sale only where there has been such a change in conditions during the interval as to make the sale an unreliable test of value. By proving a change in market conditions either party may explain away the significance of the sale." Also see *Lanquist v. City of Chicago,* 200 Ill. 69, 72, 73; Annot., 85 A.L.R.2d 149 §8(a) (1962); 29 Am. Jur. 2d *Evidence* §398 (1967); *Department of Public Works & Buildings v. Gieseking,* 108 Ill. App. 2d 105, 112-115; 32 C.J.S. *Evidence* §593(3)b (1964).

The theme of the cases is that the foundation proof must show that no substantial change in value of such property took place after the time of the sales referred to until the taking in the instant action. Cleary, Handbook of Illinois Evidence 218 (2d ed. 1963), states "* * * if not too remote in time and no substantial change in conditions or in market values has intervened."

Here however, defendant offered two sales, both of which were admitted into evidence. One was of the Diedrich farm which sold for $2560 an acre on October 24, 1973, and a second sale of the Burland property which sold for $2800 an acre in July 1972. Defendant also

presented three valuation witnesses who testified to $2937.50; $2950; and $3000 per acre.

■■■ Our Supreme Court has repeatedly held that where the jury has viewed the premises and the amount fixed is within the range of the evidence, the verdict of the jury will not be disturbed unless the record clearly shows that it has been influenced by passion or prejudice or unless there was a clear and palpable mistake. The court has also repeatedly held in eminent domain actions that where there are other witnesses and evidence as to value on both sides, even the improper admission or the improper exclusion of value evidence does not constitute reversible error where the jury has the opportunity of weighing the conflicting evidence admitted on behalf of both sides. *Trustees of Schools v. La Salle National Bank*, 21 Ill. 2d 552, 556, 557.

## IV.

The State presented a soil scientist, Goddard, who had been with the Department of Agriculture since 1967 working on soil surveys in Cook and Du Page counties and presently in charge of the soil survey being conducted in Kane County. He prepared the State's Exhibit 3, an enlargement of the Lake County soil map covering the subject property (Exhibit 2), but did not participate in the original survey. Defendant objected to the admission of the exhibits on the ground of hearsay. The State contended that the maps were admissible as an exception to the hearsay rule because they were public documents. The trial court agreed and admitted them.

Exhibit 2, a map, purports to show the various soil types on the subject property. It was sheet number 36 of at least 43 sheets. It covered an area of about 6 square miles and one of a set compiled in 1968 as a part of a soil survey by the Soil Conservation Service, United States Department of Agriculture, and the Illinois Agriculture Experiment Station. The soil maps are prepared pursuant to statute, 16 U.S.C. §590i (1970), and under extensive rules and regulations for the conduct of soil mapping which may be found in the Code of Federal Regulations, Title 7—Agriculture, Subchapter II, part 611. They are made under uniform standards by soil scientists at the State and National levels. In preparing the soil map an aerial photograph of the area is taken. Working from this the soil scientists note differences in soil at the site—from topography and from probing the soil. Probes are inserted into the ground to a depth of 5 or 6 feet and laboratory studies are made of the withdrawn soils. Based on the results the actual soil delineations are drawn of the soil maps.

In considering the hearsay objection we note that the soil survey

map was made pursuant to statutory mandate. It has been settled as an exception to the hearsay rule that records kept by persons in public office, which they are required to maintain either by statute or the nature of their office to maintain in connection with the performance of their official duties are admissible in evidence and are evidence of those matters which are properly required to be maintained and recorded therein. *People ex rel. Wenzel v. Chicago & North Western Ry. Co.*, 28 Ill. 2d 205, 212.

■■ Generally stated, the rule is that all records and reports prepared by public officials pursuant to a duty imposed by law, or required by the nature of their offices, are admissible as proof of the facts stated therein, so far as they are relevant and material to the particular inquiry, under an exception to the hearsay rule, even though they are not verified or authenticated by the person who made the entries. This exception to the hearsay rule rests in part upon the presumption that a public officer charged with a particular duty has performed it properly, and upon the fact that public officers usually have no motive to suppress or distort the truth or to manufacture evidence. 30 Am. Jur. 2d *Evidence* §§ 991-92 (1967).

■■ The admissibility of official maps and surveys are governed by the rules applicable to public records. *Lombard Park District v. Chicago Title & Trust Co.*, 105 Ill. App. 2d 371.

Defendant relies on *Lombard Park District v. Chicago Title & Trust Co.* There this court held that since the flood plain map involved was *not authorized* by statute the survey there did not meet the test of *Wenzel.*

It should be further noted that the soil scientist witness, Goddard himself, examined the subject property checking its conditions against the soil map and further that although defendant had an expert make 24 soil borings that expert could not point to one area on the soil map which was incorrect.

Defendant also relies on *Coal Creek Drainage Levee District v. Sanitary District*, 336 Ill. 11, 43. In that case the Official Report of Flooding sought to be introduced concerned causes and effects, involved the exercise of judgment and discretion, expressed an opinion and drew a conclusion. It was only "the estimates of the persons who were stated in the report to have made them."

## V.

■■ Defendant complains of the failure of the trial court to give an instruction. He has failed to abstract all instructions given in this case and has failed to include the instructions given and refused in the record on appeal. By a long and unbroken line of decisions it has uniformly

been held that errors cannot be predicated upon rulings of the court in giving or refusing instructions unless all instructons offered and given at the trial are properly preserved in the record. *Bear v. Holiday Inns of America,* 1 Ill. App. 3d 786, 788.

## VI.

In appellant's brief he has stated an issue (VI) to be presented for review as follows:

"[T]he trial court erred in basing its rulings on the evidence on absence of development of adjacent property, which did not develop because it had been condemned by the State."

This is proper and follows Supreme Court Rule 341(e)(2). But paragraph (e)(5) of that rule also requires, "A summary statement, entitled 'Points and Authorities,' of the points argued and the authorities cited in the Argument. This shall consist of the headings of the points and subpoints as in the Argument, with the citation under each heading of the authorities relied upon or distinguished. * * *."

Appellant has failed to provide us with any points and authorities as to issue VI; and he does not have an issue VI in his argument.

Under former rules points not set forth under "Points and Authorities" would have been deemed waived. *Varap v. Varap,* 76 Ill. App. 2d 402, 415.

Supreme Court Rule 341(e) provides a comprehensive statement of what parts an appellant's brief shall contain in the order named. It should be consulted and followed not only for the convenience of the parties and the court but also because failure to live up to the rules may, in the exercise of the court's sound discretion, lead to briefs being struck from the files. *O'Donnell v. O'Donnell,* 5 Ill. App. 3d 870, 873.

But buried within the confines of his argument as to issue II we find that appellant did in fact argue this issue VI. Under the present rule it is the content of the argument in the appellant's brief which determines the propositions relied upon in support of the appeal. (*Collins v. Westlake Community Hospital,* 57 Ill. 2d 388, 391-392.) We will consider the issue.

The subject property was nearby to several parcels of property which had been rezoned to various high density residential uses. The 600-acre Krilic property in particular was adjacent and it had been in 1969 rezoned to commercial, multifamily and recreational but the zoning required community sewer and water. By 1971 the development had commenced but since that time the project was more or less abandoned. In 1971 the Department of Conservation filed a petition to condemn the north 175 acres of the Krilic property.

Defendant argues that "The trial court obviously had made up his mind that there was no probability of rezoning of the subject property because development of the property to the west had not taken place." He argues now that the development of the Krilic property was circumvented by the filing of the petition to condemn. In the trial court, appellant claimed that lack of development of the Krilic property was due to indisposition of the owner.

The following occurred:

> "Court: My question is which of those have actually been developed?
>
> Defendant's Attorney: None of these have been actually developed. * * *
>
> Court: All right, anything else? Anything else?
>
> Defendant's Attorney: No, your Honor, that's all."

■■ It is for the court to make the preliminary determination of whether there is sufficient evidence of a reasonable probability of rezoning to permit the experts to testify to market value based on such a probability. If the court determines that the evidence falls short, as a matter of law, of showing any reasonable probability of rezoning within the reasonably near future, it must exclude all such evidence and opinions of value based upon a use permitted only by the rezoning. *Lombard Park District v. Chicago Title & Trust Co.*, 103 Ill. App. 2d 1, 9.

This was the procedure followed by the trial court in the instant case. The trial court, outside of the presence of the jury, heard the testimony as to whether there was sufficient evidence of the reasonable probability of rezoning to warrant submitting the issue to the jury. As to the significant factors set forth in *Lombard* the court heard evidence which indicated:

1. *Rezoning of nearby property.* The Krilic property rezoning required on site development of sewer and water. This was not in anyway similar to defendant's proposed 1-acre single-family residential without sewer or water.

2. *Growth Patterns.* None. Not one of the rezonings which had occurred was developed. The nearest was 3½ miles away adjacent to the City of McHenry.

3. *Change of Use Pattern.* None.

4. *Change of Character of Neighborhood.* None.

5. *Demand within the area for certain types of land use.* No evidence as to demand for 1-acre tracts or any other residential sites was presented.

6. *Sales of related or similar property at prices reflecting anticipated rezoning.* Perhaps.

7. *Physical characteristics of the subject property and nearby property.* Severe soil conditions on subject property.

8. *Age of zoning ordinance.* 5 years.

The court correctly ruled that there was not adequate evidence of a reasonable probability of rezoning. If a court correctly determines that the evidence is not competent, there is no right to have such evidence heard by the jury. (*Lombard,* 103 Ill. App. 2d 1, 9.) Further, as we stated under issue II, since rezoning will add nothing to the value of the condemned property unless there is a market demand for the higher use, a showing of an enhanced value stemming from a probable change in zoning is generally held a prerequisite to the consideration of the probability of such a rezoning. Annot., 9 A.L.R.3d 291, 312 (1966).

## VII.

About three weeks after the conclusion of the trial, defendant's attorney's associate and a "short hand girl" interviewed one of the jurors ostensibly "making a survey of what influences jurors." The juror stated that on voir dire when asked if he knew any of the parties he stated "no" because he "did not know nobody personally." The juror did in fact know "about" the beneficial owner because he had once serviced an account next door to the owner's building. Defendant seeks a new trial on the ground that the juror answered falsely on voir dire.

■■ The general rule is that testimony or affidavits of jurors are admissible to show actual bias, prejudice, or other ground of challenge, of a juror, disclosed by statements of the latter made either before the verdict and prior to submission of the case or after the verdict, where the bias, prejudice, or other ground of challenge was concealed or not disclosed on voir dire examination despite due diligence exercised by the movant in the questoning. 76 Am. Jur. 2d *Trials* § 1228 (1975); *Department of Public Works & Buildings v. Christensen,* 25 Ill.2d 273, 279; Annot., 48 A.L.R.2d 971, 982 (1956).

There was no court reporter present during the voir dire examination of jurors in the instant case. We do not know the exact questions put to the jurors on their voir dire examination, nor whether due diligence was exercised by the movant in his follow up questioning. This was a matter primarily within the discretion of the trial judge and there is no indication on this record that he abused that discretion.

The judgment of the Circuit Court of Lake County is affirmed.

Judgment affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.