(No. 22449.—

ROBERT B. BROWNLIE *et al.* Appellants, *vs.* WILLIAM Y. BROWNLIE *et al.* Appellees.

*Opinion filed June 19, 1934.*

118

Benjamin H. Ehrlich, (Aaron H. Cohn, of counsel,) for appellants.

Charles P. Molthrop, and Ambrose P. Finn, Jr., for appellees.

Mr. Justice Herrick delivered the opinion of the court:

The appellants, Robert B. Brownlie and Angus R. Brownlie, filed their bill in the circuit court of Cook county charging that their mother, Elizabeth Brownlie, deceased, a resident of Chicago, on November 29, 1922, executed an instrument purporting to be her last will; that she died on July 9, 1929, leaving as her only heirs-at-law and beneficiaries her seven children, two of them being

the complainants, together with Flora Rimmer, William Y. Brownlie, Mary Johnstone, S. Eleanor Brownlie and Gordon R. Brownlie; that said instrument, after providing for the payment of her just debts and funeral expenses, purported to bequeath to each of the complainants $500 and the remainder of her estate to her other five children in equal proportions. The portion left to Gordon R. was to be held in trust by William Y. until Gordon R. attained the age of twenty-five years. The bill further alleged that said instrument was on September 9, 1929, admitted to record by the probate court of Cook county and letters testamentary issued to William Y. The bill charged lack of testamentary capacity on the part of the deceased and that the will was executed as the result of undue influence exercised over the testatrix by William Y. The five children, and William Y. as executor, were made defendants to the bill. Four of the children filed answers to the bill denying the charges of undue influence and lack of testamentary capacity made by the bill. Mary Johnstone filed an answer neither admitting nor denying the allegations of the bill and demanding strict proof.

The case has been tried four times in the circuit court and has been in this court once prior to the present appeal. (*Brownlie* v. *Brownlie,* 351 Ill. 72.) On the first trial a motion to withdraw a juror was granted. On the second trial the trial court directed a verdict on the issue of undue influence. The jury returned a verdict in favor of the contestants on the issue of testamentary capacity. This verdict was set aside. The third trial followed. The trial court, at the close of all the evidence, directed a verdict in favor of the proponents on both issues. Mary Johnstone in the meantime, prior to the third trial, had filed an amended answer admitting the allegations of the bill. A decree was entered on the verdict returned on the third trial. This court reversed that decree for the errors of the trial court in the admission and exclusion of evidence

and remanded the cause for a new trial. (*Brownlie* v. *Brownlie, supra.*) On the fourth trial the jury returned a verdict on both issues in favor of the proponents, the contestants' motion for new trial was denied, and a decree sustaining the instrument as the decedent's will and dismissing the complainants' bill for want of equity was entered. From that decree this appeal is prosecuted by the contestants.

The errors assigned attack the ruling of the trial court on the admission and exclusion of evidence, unduly restricting the cross-examination of certain witnesses for the proponents, the making of alleged improper remarks by the proponents' counsel in the presence of the jury, alleged improper remarks made by the trial judge in the presence of the jury, and the overruling of the contestants' motion for new trial and entering a decree on the verdict.

Elizabeth T. Brownlie was the surviving widow of Robert T. Brownlie and was about sixty years old when she made the instrument in controversy. Her husband died on February 12, 1922. He for many years was in the stone-cutting contracting business in Chicago. His sons William Y. and Robert B. were for several years associated with him in that business. Robert B. withdrew from the business in 1917. His father purchased his interest, which was an undivided one-sixty-second interest, paying him the full value thereof plus $500. William Y. retained his interest in the business until his father's death. The business was incorporated as Brownlie & Son about six months after the father's death and the active management of the business was conducted by William Y. In 1918 Robert T. and Elizabeth T. made mutual wills, each bequeathing all of his property to the other and naming the spouse as the executor of such will. Seven witnesses, including two of the attesting witnesses, testified for the proponents upon the issue of testamentary capacity. Two other witnesses testified upon the question of identity of a

photograph and heirship. Four witnesses, including Mary Johnstone and her husband, testified for the contestants. Robert B. also testified in contradiction of the testimony of the physician of the testatrix as to an alleged conversation between the witness and the physician subsequent to the death of the testatrix.

The witnesses for the proponents all testified that in their opinion the testatrix was of sound mind and memory.. With the exception of the two attesting witnesses the period of time covered by the other witnesses on the question of testamentary capacity was for a year or more preceding the execution of the alleged will and about the same length of time succeeding such execution. The evidence shows that the testatrix administered upon the estate of her husband, appeared in the probate court and testified to the heirship, and signed all the different instruments that are pertinent to the ordinary administration of an estate. Other witnesses testified to business transactions with her and conversations tending to show a close personal contact with her. Dr. Herpe, a physician who had waited on different members of the family during the period mentioned above, before and after the execution of the will, testified that the testatrix was of sound mind and memory; that she began to fail about 1925; that in 1925 she was rather forgetful, but that there was no evidence of her breaking down, physically and mentally, prior to 1925.

Godfrey Langhenry, a member of the Chicago bar, who wrote the will and was an attesting witness thereto, died prior to the last trial. Portions of evidence given by him on a former trial were introduced by the proponents. The will was also signed by Simon T. Sutton, an attorney, and Harry A. Goldsmith, also an attorney, as attesting witnesses. They occupied offices with Langhenry. Each of these witnesses testified that at the time he signed as attesting witness he was of the opinion the deceased was of sound mind and memory at the time she signed the will

and that he was still of such opinion. Each of the witnesses stated that so far as he observed there was no evidence of fraud or undue influence exercised upon the deceased to induce her to execute the will at the time she signed the same. Goldsmith based his opinion as to mental capacity on the talk that he had with her at the time she signed the will and her general demeanor and appearance at the time of the execution of the will. He had had no previous acquaintance with her. Sutton testified that he had seen Mrs. Brownlie several times at the office prior to the execution of the will, when she called there to see Langhenry; that on those occasions he talked with her very briefly. He testified that nothing out of the ordinary happened in his presence which led him to think any undue influence caused her to execute such instrument. He based his opinion as to her mental condition upon his observation of her on the two or three times when she had been in the office prior to the making of the will and of her appearance and manner at the time she signed the will.

Objections were made by the contestants to the expression of any opinion on the mental condition of the testatrix by Goldsmith and Sutton on the ground that there was no sufficient foundation laid for the expression of such opinion by them, and that it was improper for them to express an opinion on the question of undue influence. The general rule that before a witness will be permitted to express an opinion as to the mental condition of a testator it is necessary for the witness to relate the facts and circumstances upon which he bases his opinion, and that whether a sufficient foundation has been laid then becomes a question of law for the court to pass upon before permitting the witness to express his opinion in case of an objection thereto, does not apply to attesting witnesses. Our statute requires the instrument to be attested by two witnesses and then provides what is necessary to be proved to admit the will for record in the probate court. The attesting

witnesses are witnesses that the statute requires. They are in a sense placed there by the statute for the purpose of observing the method of the execution of the will and of determining whether the testator at the time is possessed of testamentary capacity. An attesting witness may form a belief or opinion of the testator's mental capacity from his appearance at the time he executed the instrument in controversy. (*Hill* v. *Kehr*, 228 Ill. 204; *In re Will of Ingalls*, 148 id. 287; *Dickie* v. *Carter*, 42 id. 376.) An attesting witness may be permitted to express an opinion as to the mental condition of the testator at the time the subscribing witness signed, without laying any foundation therefor. (*Clapp* v. *Fullerton*, 34 N. Y. 190, 90 Am. Dec. 681; *Hellett* v. *Wood*, 55 N. Y. 634; *Holcomb* v. *Holcomb*, 95 id. 316; *Potts* v. *House*, 6 Ga. 324, 50 Am. Dec. 329; *Kaufman* v. *Coughman*, 49 S. C. 159; *Furlong* v. *Carrsher*, 108 Iowa, 492; *Hastings' Exr.* v. *Reder*, 99 Mass. 632; Greenleaf on Evidence, 440.) By virtue of our statute relating to the testimony of the subscribing witnesses to a will, such witnesses may be permitted to testify as to whether, so far as they were able to discern at the time of the execution of the will, the testator appeared to be under any undue influence. The trial court did not err in its rulings upon the testimony of the subscribing witnesses, Sutton and Goldsmith.

The proponents were permitted to introduce in evidence a photograph of the deceased testatrix. The evidence shows that the photograph was taken either in the year 1922 or the year 1924. There was a conflict in the evidence as to the physical condition and appearance of the testatrix from 1922 down through 1924. Witnesses who were well acquainted with and familiar with her appearance in the years 1922 and 1924 testified that the photograph was a correct representation of the testatrix in those years. The photograph here was not like a picture taken with the X-ray, which requires a person trained in the science of roent-

genology to take the picture or to read the same. No scientific education is necessary to read a photograph reproducing the features and appearance of an individual. Proof of the accuracy of a photograph may be made by the testimony of one who was familiar with the appearance of the person at the time the photograph was taken. (22 Am. & Eng. Ency. of Law, 776.) One of the questions in the case was as to the physical condition of the testatrix at about the time the will in question was made. It was therefore competent to make proof of her personal appearance during the period under investigation. A photograph shown to be a correct representation of the testatrix during such period of time is competent as tending to show her appearance, her vigor, temperament and apparent strength of character as shown by the picture of herself. (*Pritchard* v. *Austin*, 69 N. H. 367, 146 Atl. 188.) The trial court did not err in permitting the photograph to go in evidence.

It is earnestly urged by the appellants that their case was prejudiced by the action of the court and the attorneys by an episode that occurred during the course of the trial. An attorney in the case appeared on behalf of Mary Johnstone. She was a defendant in the case and by the will her financial interests were the same as the other proponents. Her sympathies were with the contestants, and apparently she was acting in conjunction with them in an effort to set aside the will. Her attorney undertook to call as a witness Mrs. Flora Rimmer, a daughter of the deceased testatrix, and have her testify in the case. A discussion then ensued between the court and counsel, in the presence of the jury, with reference to the situation of Mrs. Johnstone in the case and of her right to call witnesses. The attorneys for the contestants stated before the court that they were not objecting to Mrs. Johnstone calling Mrs. Rimmer as a witness. The court rightfully ruled that Mrs. Johnstone could not offer the testimony of

Mrs. Rimmer on behalf of Mrs. Johnstone. It is quite obvious that Mrs. Johnstone, while nominally a proponent, was aiding the contestants in the case. Her amended answer to the bill, in which answer she admitted all the allegations of the bill, was not filed until the time permitted by the statute to file the will contest had expired. To have permitted her to offer evidence attacking the validity of the will would have been to have granted her the right to carry on a contest after the expiration of the period allowed to her for that purpose by the statute. The trial judge was not guilty of any misconduct in anything he said during this colloquy, nor was there anything said by counsel for the proponents during the colloquy, in the presence of the jury, that in our judgment prejudiced the rights of the contestants.

Flora Rimmer was called as a witness by the proponents and by her they proved that the deceased testatrix did not re-marry after the death of her husband, did not adopt any child or children, and that no children were born to her after his death. The contestants' counsel then undertook to cross-examine the witness as to where she lived— whether she did not live in the home of the testatrix after the death of Robert T. Brownlie, her father. Objection was made and sustained on the ground that the question was immaterial and not proper cross-examination. No offer was made of what further proof was expected to be made by the cross-examination of this witness. It is contended by the contestants that since Mrs. Rimmer was a party to the suit and called as a witness by the proponents the door was open for a wide cross-examination of her; that the latitude allowed on cross-examination as applied to parties to the suit is different from the ordinary rule. The trial court did not err in sustaining the objection to the question propounded and did not err in ruling that the cross-examination must be confined to the subject matter testified to. There is nothing in the original examination which jus-

tified the propounding, on cross-examination, of any question relating to the mental condition of the testatrix or undue influence charged against William Y. Brownlie.

In the evidence read by the proponents from the testimony given by Godfrey Langhenry on a former trial of the case, none of his testimony with reference to the incorporation of the stone-cutting company after the death of Robert T. Brownlie was offered. The contestants read a part of the cross-examination which was not objected to, which was pertinent to the original examination offered by the proponents. The contestants then undertook to go into the testimony of Langhenry given on a former trial with reference to the application for a charter for the stone-cutting company, known as Brownlie & Son, Inc., and that he prepared such application. The evidence of Langhenry was that he did not know what the interests of the parties were in the partnership at the time of its incorporation, nor what transactions, if any, had taken place between the mother, the testatrix, and the son William Y. The court did not err in sustaining the offer to read such offered matters from the transcript of the evidence of Langhenry.

The ruling of the court in sustaining the objection to the offer in evidence of the certified copy of the charter of Brownlie & Son was correct. The contestants attempted to offer in evidence the dissolution agreement executed by Robert T., Robert B. and William Y. Brownlie in the co-partnership of Brownlie & Son made in May, 1917, to which offer an objection was sustained. It was neither material nor pertinent to the issues.

It is argued by the appellants that because the decedent, as executrix of her husband's will, did not inventory the stone-cutting business, such fact is conclusive evidence of undue influence. The evidence of Langhenry, who was the attorney for the executrix, was to the effect that he advised the testatrix not to inventory such property, inas-

much as it was a partnership estate belonging to the late partnership of her husband and William Y. Brownlie, and that administration of that estate, if necessary, would be conducted under the statute by the surviving partner.

It is complained that the court erred in striking from the testimony of Mary Johnstone her statement to the effect that her brother, William Y. Brownlie, told her that he knew nothing about the will until after his father's death. Counsel are mistaken in their contention that the court struck this statement. As we read the record the statement remained in the record.

The evidence shows that on the occasion when the will was prepared William Y. Brownlie took his mother to the office of Langhenry, the attorney. The testimony of Langhenry is to the effect that William Y. gave no advice or suggestions as to what disposition should be made of the property; that the testatrix gave him directions, unaided and unassisted by her son William Y.; that Gordon R. Brownlie, at the time directions were given for the preparation of the will, was a minor. His mother did not desire him to come into his share of the estate until he was twenty-five years old. She explained to Langhenry that she wanted his share held for him. Langhenry told her she could place such share in trust. She then asked William Y. if he would act as trustee, to which he assented. The evidence further shows that on this occasion she gave the attorney the names of the beneficiaries and related in a general way of what her property consisted. She also told Langhenry that Robert B. had not acted fairly with his father when he was in the office with him; that he had cost his father a lot of money, and that Augus R. had left home and was disobedient and wild. She asked Langhenry if she would have to leave those two anything, to which Langhenry replied, in substance, that she had an absolute right to dispose of her property in whatever way she chose. She then stated that she thought it would be fair if she

left these two sons $500 each. Langhenry further testified, over the objection of the contestants, that at the time he prepared the mutual wills of Robert T. and Elizabeth Brownlie in 1918, which was subsequent to the drawing of the dissolution agreement between Robert B. and the father, the father stated in substance that Robert B. and Angus R. were both bad children; that they had cost him more than enough money already, and that he did not want them to participate in any of the estate that might be left through him or through his wife. Mrs. Brownlie was present on this occasion. Having in mind the making of the mutual wills in 1918 and the later statement of Mrs. Brownlie regarding such sons when she was in the act of having her own will prepared, we conclude it was not reversible error for this statement of the father, made in the presence of the mother, to go into the record. Other statements appear in the record made by the mother with reference to the sons Robert B. and Angus R. which we have not set forth herein but which to her mind were sufficient justification for her not permitting them to share equally with her other children in her estate.

The evidence of the three attesting witnesses shows that William Y. Brownlie was not present in the room at the time when his mother executed the will and the attesting witnesses subscribed to the same. William Y. receives no greater share in the estate than his three sisters and his brother Gordon R. The undue influence which will void a will must be such as to deprive a testator of free agency. (*Grosh* v. *Acom,* 325 Ill. 474; *Cunningham* v. *Dorwart,* 317 id. 451.) The undue influence which will invalidate a will must be directly connected with the execution of the instrument, be operating when the will was made, and thereby prevent the testator from exercising his own wish and will in the disposition of his estate. (*Flanigon* v. *Smith,* 337 Ill. 572; *Chaney* v. *Baker,* 304 id. 362; *Goff* v. *Gerhart,* 316 id. 513; *McGrady* v. *McGrady,* 298 id.

129.) The fact that the beneficiaries of a will are those by whom the testator was surrounded and with whom he stood in confidential relationship at the time of executing his will is no ground for inferring undue influence. (*Michael* v. *Marshall,* 201 Ill. 70; *Rutherford* v. *Morris,* 77 id. 397.) The influence must be directed towards procuring the will in favor of certain parties and must be such as to destroy the testator's freedom of will and purpose. (*Pond* v. *Hollett,* 310 Ill. 31; *Gregory* v. *Richey,* 307 id. 219; *Blackhurst* v. *James,* 304 id. 586; *Snell* v. *Weldon,* 239 id. 279.) Proof of undue influence must be consistent with the exercise of undue influence and also be inconsistent with its absence. *Cunningham* v. *Dorwart, supra; Compher* v. *Browning,* 219 Ill. 429.

William J. Gilek was a witness for the contestants. Gilek operated a grocery store in the neighborhood where the testatrix lived. He testified that she bought groceries from him in 1922; that sometimes she would have with her a written list of groceries she desired; that sometimes she paid and sometimes she did not, and that if she did not have her list she would be confused, saying she forgot what she wanted. He expressed no opinion as to her mental condition. Gilek's wife testified to substantially the same facts. She expressed no opinion on the mental capacity of the testatrix. Mary Johnstone and her husband both testified to facts tending to show lack of testatmentary capacity on the part of the testatrix. Mrs. Johnstone, amongst other matters, stated that William Y. presented papers to her mother in 1922 and 1923; that he had her practice writing her signature before she signed the papers; that he would tell her to sit down and write her name; that she objected, saying she could not do it—that he was making her do it; that he should let her go home, and that she cried; that at that time she was in her own home. Mrs. Johnstone further testified that there was a noticeable change in 1923 in the physical and mental condition of her

mother and that her condition from then on grew worse. She also stated that when her brother William Y. read the will to her after the death of her mother he told her he did not know his mother had a will until the lawyer told him. She testified that she was present at Dr. Herpe's office in 1930 with her brother Robert B.; that Dr. Herpe told Robert B. that he, the doctor, was mistaken in having told him that his mother was insane thirty days after her husband's death; that he had come to the conclusion it was one year afterwards that she was absolutely unsound. She admitted on cross-examination that she desired to have the will set aside. Robert B., one of the contestants, testified that Dr. Herpe told him after his father's death that his mother was insane thirty days after his father's death.

Complaint is made by the contestants of other rulings on the evidence. We have considered each of such rulings, but there are no material errors in any of them sufficient to justify a reversal of the case. The issues were purely questions of fact for the jury to decide. None of the instructions given or refused for either party are in the record and no complaint is made of the action of the trial court in passing upon the instructions. In that condition of the record the contestants must be held as admitting that the jury were fully, fairly and accurately instructed upon all the issues in the case and as to where the burden of proof was upon all the different issues made by the pleadings. While this case has been many times tried, that of itself would not be any justification for affirming the decree if justice had not been done. Yet in this case both of the issues made by the pleadings went to the jury. They have resolved the facts against the contestants, and the verdict is not against the manifest weight of the evidence.

We find no reversible error against the contestants, and the decree is therefore affirmed.

*Decree affirmed.*