Georgianna Foster, Administratrix of the Estate of Haron C. Foster, Deceased and Georgianna Foster, Individually, Plaintiffs-Appellees, v. Oren L. Bilbruck, Defendant-Appellant.

Gen. No. 10,193.

Third District.

January 19, 1959.

Released for publication February 4, 1959.

John F. Gibbons, of Jerseyville, and D. A. McGrady, of Gillespie, for defendant-appellant.

Mondhink, Mosele & Wiseman, of Alton, for appellees.

JUDGE REYNOLDS delivered the opinion of the court.

This cause grows out of an automobile collision a short distance north of Chatham, Illinois, on Illinois Route No. 4, between a car driven by the defendant Bilbruck and one owned by one Angelo Borio, in which the plaintiff Georgianna Foster was injured and her husband Haron C. Foster was fatally injured. The decedent, Haron C. Foster and Bilbruck were married to twin sisters, and both the Fosters and Bilbruck reside at Carlinville, Illinois. In the Foster family there was the deceased Haron C. Foster, his wife Georgianna Foster, a grown daughter and one minor child, aged fifteen years, named Evelyn who was dependent upon Haron C. Foster for support. Arrangements were made between Foster and Bilbruck for Bilbruck to drive the Fosters to Springfield for Mr. Foster to get some glasses. They left Carlinville to drive to Springfield in Bilbruck's car. The weather was clear and the pavement was dry. Nothing occurred between Carlinville and Chatham, and shortly after going through Chatham, the defendant came up behind a car driven by one

175

John Holinga. Both the Holinga car and the defendant's car were traveling northward on said Route No. 4. The defendant kept behind the Holinga car for some distance and after coming to the top of a hill, decided to pass. There is some conflict in the evidence as to the speed Bilbruck was driving, the plaintiff Georgianna Foster testifying that he was driving at speeds of seventy and seventy-five miles per hour. This speed is disputed by the defendant. After reaching the crest of the hill, the defendant claims that there was a straight stretch of the highway of approximately 1000 feet. He then started to pass the Holinga car. The defendant claims that Holinga speeded up as he started to pass, but the defendant did pass the Holinga car. It was admitted that cars were approaching from the north. The plaintiff Georgianna Foster testified that she observed the approaching cars from the north and warned the defendant, telling him that there were two cars coming, but this is disputed by the defendant. After passing the Holinga car, and in getting back into the northbound lane of the highway, the defendant got off the pavement and on to the right shoulder of the road. Apparently this threw his car out of control, and he then sideswiped an approaching Cadillac and then with his car completely out of control, his car proceeded down the road and collided head on with a Pontiac automobile driven and owned by Angelo Borio. Haron C. Foster was fatally injured and died a few days later. The testimony is conflicting as to the speed of the defendant's car in passing the Holinga car. The plaintiff testified that he was traveling at about 55 miles an hour before he attempted to pass, and that he speeded up. The witness Borio estimated the speed of the defendant's car at 60 miles per hour. The defendant testified he was traveling at about 35 miles per hour as he pulled out to pass, but he was not positive as to his speed at the

time of the collision. From the evidence it appears there is a fairly straight stretch of pavement from the top of the hill where the defendant started to pass, to a point where the accident occurred. There is a "No Passing" sign about 500 feet from the top of the hill, and about 700 feet north of this "No Passing" sign, the road goes into a curve. Even the straight stretch claimed by the defendant is disputed by Thomas Moody, the State Highway Policeman, and others, they claiming it to be a long continuing curve. The defendant claims he passed on this straight section, and that the accident occurred at the beginning of the curve.

From the testimony of the witnesses Borio and Holinga, it appears, that after coming back on the pavement and sideswiping the Cadillac, the defendant's car then crossed the black line and into the southbound traffic lane and that at the time of the impact with the Borio car, the defendant's car was off the pavement and on the shoulder on the west side of the highway.

The defendant was given an arrest ticket by the State Highway Policeman Moody, for passing on a curve and appeared before a justice of the peace, pleaded guilty and was fined.

The plaintiff Georgianna Foster was appointed Administratrix of her deceased husband's estate and in her name and as such administratrix brought suit against the defendant Bilbruck in the Circuit Court of Macoupin County, claiming damages in four counts, Count I being an administrator's complaint based on negligence, Count II, an administrator's complaint charging the defendant with wilful and wanton misconduct, Count III a negligence complaint by Georgianna Foster, and Count IV, a complaint by Georgianna Foster, charging the defendant with wilful and wanton misconduct. Counts I, III and IV were withdrawn by

the plaintiff before the cause was submitted to a jury and only the issues of Count II were submitted to the jury. The jury returned a verdict of $8500 for the plaintiff and the court entered judgment upon the verdict. From that judgment the defendant appeals to this court.

The defendant contends that the deceased Haron Foster and his wife Georgianna Foster were guests and that there was not sufficient proof of wilful and wanton misconduct on the part of the defendant to sustain the verdict; that the verdict is against the weight of the evidence, is contrary to law, and that the trial court should have directed a verdict in favor of the defendant. Also the defendant complains of the admission of certain photographs of the road at and near the scene of the accident.

As to the status of the plaintiff and decedent Haron Foster, it seems clear that they were guests and therefore under the Guest Statute. The defendant was using his own automobile to take them to Springfield to get some eyeglasses for the decedent. While there is some testimony that the decedent Haron Foster and the defendant had shared the expenses of other trips, there is no evidence here of sharing expenses and it appears that Foster and his wife were guests on this trip. Accordingly, under the Guest Statute, the defendant is only liable to them in damage for the death of Haron Foster, or injury to the plaintiff, Georgianna Foster, for wilful and wanton misconduct.

Each case must rest upon its own facts and while there can be applied to all cases the basic concept of what constitutes wilful and wanton misconduct, such conduct is a matter of degree resting upon the facts in each case. But our courts in Illinois have in many cases defined what action or failure on the part of a defendant will be considered as wilful and wanton misconduct, and we must apply that basic concept

178

to this cause. In the case of Hering v. Hilton, 12 Ill.2d 559, that court in defining wilful and wanton misconduct said: "Wilful and wanton misconduct has been defined in myriads of cases, each one reiterating or embellishing the phraseology of its predecessors. Streeter v. Humrichouse, 357 Ill. 234; Bartolucci v. Falleti, 382 Ill. 168; Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569; Mower v. Williams, 402 Ill. 486; Myers v. Krajefska, 8 Ill.2d 322, 328. One often quoted definition is that set forth in Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, at page 583: 'A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.' In the recent case of Myers v. Krajefska, 8 Ill.2d 322, this court refused to overrule that definition. The court noted that although there are some variations in the phraseology of the definitions of wilful and wanton misconduct in the cases, the basic concept as applied in the case law is the same, and since such conduct is usually a matter of degree, no hard-and-thin-line definition could be made."

██ The defendant contends that his motions for a directed verdict for the defendant at the close of the plaintiff's evidence and at the close of all the evidence should have been granted by the trial court. With this contention we cannot agree. A motion for a directed verdict, as said in the case of Bartolucci v. Falleti, 382 Ill. 168, is in the nature of a demurrer to the evidence. In considering such a motion, the evidence must be considered in its aspects most favorable to the party adverse to the motion. Bartolucci v. Falleti, 382 Ill.

168; Shutan v. Bloomenthal, 371 Ill. 244; Blumb v. Getz, 366 Ill. 273. As said in the Bartolucci v. Falleti case, at page 173, "it becomes the duty of this court to examine the record to determine whether there is any evidence, which, taken with its intendments most favorable to the plaintiff, tends to prove the charge of the complaint. Sycamore Preserve Works v. Chicago and Northwestern Railway Co., 366 Ill. 11; Miles v. Long, 342 Ill. 589; Hunter v. Troup, 315 Ill. 293." This view is reiterated in the case of Hering v. Hilton, 12 Ill.2d 559, where the court in that case said, page 562, "In the instant case, in determining whether the wilful and wanton count should have been submitted to the jury, we must measure defendant's conduct by that standard. However, in so doing we cannot consider the conflicts in the evidence, nor its weight or preponderance, nor the credibility of witnesses, but must take that evidence as true which is most favorable to plaintiff's cause of action. (Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, 581.) If such evidence and its intendments most favorable to plaintiff tend to establish wilful and wanton misconduct by defendant, then defendant's motion for a directed verdict was properly denied."

Using the yardstick as laid down by these cases, and applying it to this case, it is clear that there is sufficient evidence in the record to warrant submission of the case to the jury. The plaintiff Georgianna Foster testified that she warned the defendant just as he was about to pass the Holinga car that there were two cars approaching from the opposite direction. Although disputed, she testified that the defendant was driving at a high rate of speed. The testimony of Holinga and Borio, shows rather conclusively that defendant lost control of his car in passing the Holinga car. There is evidence that when the defendant had passed the Holinga car, he drove so as to drive off the pave-

ment and on the earth shoulder intentionally or carelessly, it matters not, so that in trying to get back on the pavement, his car went out of control. There is ample evidence in the record to sustain the proposition that here was a dangerous situation and that the defendant did nothing to avoid that danger. As said in the brief of the defendant, "self preservation is the first law of nature," so it must be conceded that the acts or failures of the defendant were not intentional. But, if the testimony of the plaintiff is correct, she warned him of the approach of other cars, and the defendant, according to his own testimony did not decrease his own speed or attempt to drop back behind the Holinga car. Thus the question posed by the definition of wilful and wanton misconduct as defined in the Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, namely, after knowledge of impending danger, did the defendant exercise ordinary care to prevent it, presents a question of fact that is properly submitted to a jury. As said in the Hering v. Hilton case, page 564, "As hereinbefore noted, defendant need not have intended that any harm should ensue, nor actually know for sure that there would be a collision; it is sufficient if he had notice which would alert a reasonable man that substantial danger was involved, and that he failed to take reasonable precautions under the circumstances. Stephens v. Weigel, 336 Ill. App. 36." The defendant here admitted seeing at least one of the cars approaching. We think the ruling of the trial court denying the motions for a directed verdict was correct.

■ Since we have determined that there is evidence in the record that standing alone presents a question of fact, and that the question of wilful and wanton misconduct on the part of the defendant is a question of fact properly determinable by a jury, Schneiderman v. Interstate Transit Lines, Inc., 394

Ill. 569, at page 583, and Bernier v. Illinois Cent. R. Co., 296 Ill. 464, the contention of the defendant that the verdict of the jury is against the weight of the evidence, will be considered. All the evidence in the case must be weighed as a whole, not to determine if there is evidence to support the verdict, but is the verdict against the manifest weight of the evidence and palpably erroneous. It seems undisputed that the defendant after driving behind the Holinga car for some distance decided to pass and did pass the Holinga car and in so doing got off the pavement and lost control of his car. It is true that the defendant denies the statement of the plaintiff Georgianna Foster that she warned him of two cars coming from the north and meeting the defendant's car. Yet this evidence of the plaintiff presents a question of fact. It is undisputed that the defendant after he saw or knew the Holinga car was speeding up did not slow down and drop back of that car, but instead speeded his own car up and did pass. There is evidence in the record to show that he was driving at a high rate of speed, just before the accident and is vague as to his speed when the accident occurred. It is undisputed that, accepting the defendant's version that he had about one thousand feet of straight road, the accident occurred as he collided with the Cadillac coming out of the curve from the north. There is nothing in the evidence to show that when the defendant ran off the road he did anything to stop his car.

█ █ Our courts have repeatedly held that the verdict of a jury as to a question of fact should not be disturbed by a reviewing court unless such verdict is manifestly and palpably against the weight of the evidence. Koch v. Lemmerman, 12 Ill.App.2d 237; Ashby v. Irish, 2 Ill.App.2d 9; Hanck v. Ruan Transport Corp., 3 Ill.App.2d 372; Bartels v. McGarvey, 331 Ill. App. 275; Goad v. Obernagel, 302 Ill. App. 370;

182

Fisher v. Illinois Terminal R. Co., 350 Ill. App. 555. On the record before us, this court cannot conclude that the verdict of the jury was against the manifest weight of the evidence. As has been said so many times, the trial court has the opportunity to see the witnesses and observe their conduct and demeanor upon the witness stand, and with the evidence conflicting a reviewing court should not substitute its judgment for that of the jury.

The other point raised by the defendant is the admitting of pictures of the scene of the accident, which the defendant claims are so distorted as to convey mistaken impressions of distance not only to the jury but to any ordinary person. Defendant cites no authority in support of his position and we know of no rule which would prohibit the introduction of pictures of the scene of the accident, provided such pictures represented an accurate portrayal of the subject in question. Photographs have long been used in courts of Illinois for better presentation of evidence, and are not evidence in themselves, but are allowed for the purpose of enabling the jury to understand and apply the testimony. Connors v. Winke, 200 Ill. App. 351. Photographs stand on the same footing as a diagram, map, plan or model, and a photograph is a legitimate mode of proving conditions which can be shown by representation of that sort, Henke v. Deere & Mansur Co., 175 Ill. App. 240. Photographs of place of accident taken subsequent to injury are admissible where conditions of place have not changed between time of accident and taking the photographs. Chicago & E. I. R. Co. v. Lawrence, 96 Ill. App. 635.

As to the pictures themselves, James Galloway, a photographer for International News Service and the sheriff's office at Springfield, testified that he took the pictures on the day of the accident. The State Highway Patrolman, Thomas A. Moody testified

that the photographs, constituted a correct photographic representation of the scene of the accident. The defendant introduced no evidence to contradict the photographs or to show that they were in fact incorrect or not an accurate portrayal of the scene of the accident. This court can see no merit in this contention of the defendant.

The judgment of the Circuit Court will be affirmed.

Affirmed.

ROETH, P. J. and CARROLL, J., concur.