LILLIAN CASSON *et al.*, Plaintiffs-Appellants, *v.* GORDON NASH, Defendant-Appellee.

First District (2nd Division)   No. 76-354

Opinion filed November 15, 1977.

Mahoney and McArdle Chartered, of Chicago (Michael J. McArdle, of counsel), for appellants.

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Robert G. Schloerb, John P. Moe, and Ellen J. Kerschner, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

After being injured in a two-car collision while passengers in Lillian Cook's automobile, plaintiffs, Lillian Casson and Josephine Pustz, filed suit against Gordon Nash, the driver of the other vehicle, alleging that their personal injuries were directly caused by Nash's negligence. Following a jury trial, a verdict was rendered in favor of Nash, and the trial court entered judgment on this verdict. Plaintiffs then filed a motion for judgment notwithstanding the verdict and for a trial on the issue of damages or in the alternative for a new trial on all issues. This motion was denied in its entirety by the trial court.

In this appeal plaintiffs raise the following contentions: (1) that the trial court erred in denying plaintiffs' motion for summary judgment in which plaintiffs asserted the doctrine of estoppel by verdict; (2) that plaintiffs were denied a fair trial when the trial court allowed defense counsel to inform the jury that plaintiffs' personal injury action against Lillian Cook had been dismissed because she loaned each plaintiff a certain sum of money and when the court refused to admit into evidence a photograph depicting the damage sustained by the right side of the vehicle in which plaintiffs were riding; (3) that the jury's verdict in Nash's favor was against the manifest weight of the evidence because Nash's negligence was established as a matter of law; and (4) that defense counsel's closing

argument was prejudicial because it contained facts and inferences not supported by the evidence elicited at trial.

We reverse.

On January 25, 1972, plaintiffs were passengers in an automobile driven by Lillian Cook when it was struck by Nash's vehicle. Three lawsuits were filed as a result of this accident:

Suit 1—Nash sued Cook. However, this suit had been settled and dismissed when the present matter went to trial.

Suit 2—Cook sued Nash (*Cook v. Nash*, Docket No. 73 L 1835). This suit was tried before a jury one week prior to the commencement of trial in the instant case. Casson, Pustz, Cook and Nash testified and were cross-examined during this proceeding. The jury returned a general verdict for Cook but stated in a special interrogatory that Cook was contributorily negligent. By the time trial in the present case had begun, judgment had been entered on the special interrogatory for Nash.

Suit 3—The present matter before this court. Casson and Pustz sued Cook and Nash. Prior to trial, Cook was dismissed as a defendant because she executed a separate loan agreement with each plaintiff.

Before trial in the present case, plaintiffs made a motion for summary judgment in which they asserted the doctrine of estoppel by verdict. Plaintiffs argued that the jury's general verdict against Nash in Suit 2 should estop the defendant from raising the issue of his negligence in a subsequent suit. The trial court denied the motion.

Casson and Pustz also presented a motion *in limine* requesting that Nash's attorney be precluded from referring to the loan agreements between Cook and the two plaintiffs. However, the court ruled that it would permit counsel for both parties to inquire into these transactions. The following testimony was then heard:

Pustz testified that Lillian Cook picked her up for work at approximately 7:15 a.m. on June 25. Casson was also in the Cook vehicle at this time, and she was seated in the front passenger seat. Pustz sat in the rear seat directly behind Casson. In order to get to their place of employment, Cook drove her vehicle northbound on Ashland Avenue toward 119th Street.

At its intersection with 119th Street, Ashland Avenue consists of four northbound lanes. However, the far left lane is a left turn only lane. 119th Street has two eastbound lanes and two westbound lanes which are separated by a concrete median strip. There are traffic control lights at this intersection.

Pustz stated that as they approached the intersection, traffic on Ashland Avenue was light, and the weather was clear and cold. She estimated that the Cook automobile was traveling at a speed of 20 to 25 miles per hour at

this time, and she said that the car was in the second lane from the left. When Cook's vehicle was approximately 20 or 25 feet south of the intersection, Pustz noticed that the traffic light on the northwest corner was green for Ashland Avenue traffic. However, she did not look at this light again. Pustz further testified that she caught a glimpse of Nash's car prior to impact. She stated that the Cook vehicle had almost passed through the intersection when it was struck in the right side. After the collision, Cook's automobile continued forward and hit a ramp abutment.

Lillian Casson confirmed Pustz's testimony concerning the speed of Cook's vehicle and stated that the host driver was driving in her normal manner prior to the collision. Casson testified that she did not notice the traffic lights as they approached the intersection. However, once in the intersection she saw Nash's car coming toward Cook's automobile at approximately 40 to 45 miles per hour from about 20 to 25 feet east of Ashland Avenue. Casson estimated that the Cook vehicle was even with the light standard in the center of 119th Street when she first saw defendant's automobile and was almost across 119th Street when the collision took place.

Nash testified that he was driving westbound on 119th Street toward Ashland Avenue prior to the collision. He estimated that his highest rate of speed on 119th Street was 30 to 35 miles per hour and stated that he was in the left lane next to the concrete divider just before reaching the intersection. Nash first observed the intersection's traffic light when he was approximately one and one-half blocks east of the crossway, and at this time the light was red for westbound traffic. However, this light changed to green when defendant was about 150 feet from Ashland Avenue. Nash then noticed eastbound traffic on 119th Street and observed an eastbound car attempting to make a left turn onto Ashland. Nash stated that he slowed down upon entering the intersection; that the traffic light for westbound traffic was green at this time; that he did not look to his left; that he never saw the Cook vehicle prior to colliding with it; that he attempted to apply his brakes but was unable to do so; and that the entire front end of his vehicle came into contact with the right side of Cook's automobile. Upon impact, Nash's car stopped and spun around to the north.

A co-worker was following Nash in his automobile and witnessed the collision. The co-worker testified that he was 15 feet behind defendant's vehicle when it entered the intersection; that the traffic light for westbound traffic was green at this time; that he did not see Cook's automobile prior to the impact with Nash's car; and that the collision took place between the right and left westbound lanes of 119th Street. This witness further stated that the brake lights of defendant's car did not go

on at any time before the collision, and he confirmed Nash's positioning of his vehicle after the accident. Lastly, the co-worker said that the doors on the right side of Cook's vehicle were damaged.

An attendant at a service station located on one of the intersection's corners also witnessed the collision. He testified that the accident took place in the middle of the intersection. As soon as the attendant observed the two automobiles collide, he looked at the intersection's traffic light and observed that it was green for westbound traffic on 119th Street.

Initially plaintiffs argue that the trial court's denial of their summary judgment motion was improper. Plaintiffs contend that the general verdict for Cook in Suit 2 is a final determination that Nash was negligently operating his motor vehicle when it collided with the automobile in which they were passengers; that such determination is not contravened by the jury's special finding of contributory negligence on the part of the host driver; and that for these reasons the trial court should have precluded Nash from relitigating the issue of his liability in the present matter. In support of this argument plaintiffs point out that Nash had ample opportunity in the second suit to cross-examine plaintiffs' witnesses and to present witnesses in his own behalf.

■█ It is well established that after an evidentiary trial a prior order denying a motion for summary judgment is not reviewable on appeal because the result of such denial merges with the trial that follows. (*Simon v. Jones* (1st Dist. 1968), 96 Ill. App. 2d 1, 5, 238 N.E.2d 259, 261.) Since this matter is not properly before this court, plaintiffs' arguments concerning the denial of the summary judgment motion fail. However, we deem it important to consider generally plaintiffs' contention that the doctrine of estoppel by verdict applies to the issue of Nash's negligence.

■█ The doctrine of *res judicata* is that once a final judgment is rendered by a court of competent jurisdiction, such judgment must be deemed conclusive as to all rights of the parties and their privies regarding questions actually litigated and those questions which might have been raised in a subsequent suit based on the same cause of action. *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 426-27, 186 N.E. 152, 155-56.

■█ Estoppel by verdict is but another branch of the doctrine of *res judicata*, and it is based on the same principle of law—that is, that a matter once adjudicated by a court of competent jurisdiction cannot again be controverted. (*City of Elmhurst v. Kegerreis* (1945), 392 Ill. 195, 201, 64 N.E.2d 450, 452.) Specifically, estoppel by verdict provides that where a particular question or fact has been adjudicated in a former suit by a court of competent jurisdiction, and the same fact or question is again at issue between the same parties or their privies, its adjudication in

the first cause will, if properly presented and relied on, be conclusive of the same question in the later suit, irrespective of whether or not the cause of action is the same in both suits. *Hoffman v. Hoffman* (1928), 330 Ill. 413, 417, 161 N.E. 723, 725.

■■ For the doctrine of estoppel by verdict to be applicable, it is not necessary that the parties have been arrayed on opposite sides in the prior litigation or that formal issues have been drawn up between them. (*Lynch v. Chicago Transit Authority* (1st Dist. 1975), 62 Ill. App. 2d 220, 222, 210 N.E.2d 792, 793.) However, in Illinois it is required that the issue decided in the prior adjudication be identical with the one presented in the case under review; that the party against whom the estoppel is asserted was a party or in privity with a party to the prior litigation; and that there has been a final judgment on the merits in the former suit. *Riley v. Unknown Owners* (1st Dist. 1975), 25 Ill. App. 3d 895, 899, 324 N.E.2d 78, 81; but see *In re Hutul* (1973), 54 Ill. 2d 209, 213, 296 N.E.2d 332, 334, *cert. denied*, 414 U.S. 1040, 38 L. Ed. 2d 331, 94 S. Ct. 541.

The determinative question in the instant case is whether Nash operated his motor vehicle in such a negligent manner that he caused the collision with Cook's automobile. It is evident that the same issue was also decided in Suit 2. In rendering a general verdict against Nash, the jury must have decided that he was negligent. Besides having been the defendant in the second suit, Nash also is the party against whom plaintiffs are attempting to assert the estoppel. It appears, therefore, that the first two requirements for the application of the doctrine of estoppel by verdict are satisfied.

However, we were informed during oral argument that Cook filed a motion for a new trial in Suit 2. This motion was filed after the entry of judgment for Nash in Suit 3 but within 30 days of the entry of judgment on the special interrogatory in the second suit. The trial court granted the motion.

■■ Since a new trial has been ordered in Suit 2, a final judgment on the merits has not been entered in that action. Accordingly, the doctrine of estoppel by verdict is not applicable to the issue of Nash's negligence in the present matter because the third requirement for the doctrine's utilization has not been fulfilled.

Plaintiffs' second contention pertains to defense counsel's in-court examination of Casson and Pustz concerning their separate loan agreements with Lillian Cook. As was stated above, plaintiffs' original complaint named Cook as a defendant. The host driver was dismissed from the complaint after she executed a separate loan agreement with each plaintiff. Casson and Pustz were loaned $22,023 and $5,888 respectively. Both agreements provided that the loaned amounts would be repaid to Cook out of the proceeds of any judgment rendered against

Nash and that each plaintiff would "use and pursue any reasonable and legal means * * * available * * *" to collect a judgment against defendant.[1]

After plaintiffs finished their presentation of evidence, defense counsel, while in chambers, stated that he wanted to offer the loan agreements into evidence. Over the objection of counsel for plaintiffs, the trial court ruled that defense counsel would be permitted to ask Casson and Pustz a limited number of questions regarding the nature of these loans. However, the court refused to admit the loan documents into evidence. Defense counsel then called Casson as an adverse witness pursuant to section 60 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60) and asked the following questions in the presence of the jury:

Defense Counsel: "Miss Casson, you sued Mr. Nash, right?"

Casson: "Yes, sir."

Defense Counsel: "And you sued Miss Cook?"

Casson: "Yes."

Defense Counsel: "And the suit against Miss Cook has been dismissed, has it not?"

Casson: "I guess so."

Defense Counsel: "And that suit was dismissed because Miss Cook loaned you twenty-two thousand and twenty-three dollars, is that right?"

Casson: "Yes."

Defense Counsel: "And when you borrowed twenty-two thousand and twenty-three dollars, you agreed to repay Miss Cook if you collect in this case from Mr. Nash, is that right?"

Casson: "I didn't quite understand the agreement."

Defense Counsel: "Okay, and you agreed that if you don't collect from Mr. Nash in this suit you dont have to repay Miss Cook, is that right?"

Casson: "As I said, I didn't quite understand the agreement. We were told by our lawyer to sign."

Defense Counsel: "And you agreed to use and pursue any legal means which are available to you to collect from Mr. Nash, is that right?"

Casson: "Yes."

---

[1] Casson's agreement provided that the $22,023 had to be repaid on a 100% basis if the verdict against Nash was in excess of $44,000. If the verdict was less than $44,000, Casson agreed to repay only 50% of the loaned amount.

Pustz's loan agreement contained a similar provision. If her verdict against Nash was in excess of $11,776, she was obligated to repay 100% of the loaned amount. If the verdict was less than $11,776, only 50% of the loan had to be returned.

This information was provided in appellant's brief. The loan agreements were marked for identification by defendant, but the trial court refused to admit them into evidence. Consequently the loan documents were not made part of the record on appeal.

Thereafter Pustz was called pursuant to section 60, and the following colloquy took place:

Defense Counsel: "Miss Pustz, you sued Mr. Nash?"

Pustz: "Yes, I did."

Defense Counsel: "And you sued Miss Cook?"

Pustz: "Yes."

Defense Counsel: "The suit against Miss Cook has been dismissed?"

Pustz: "Yes."

\* \* \*

Defense Counsel: "And that suit was dismissed because Miss Cook loaned you five thousand and eighty dollars [sic], is that correct?"

Pustz: "Yes."

Defense Counsel: "And when you borrowed five thousand and eighty dollars [sic], you agreed to repay Miss Cook if you collect from Mr. Nash, in this case, is that right?"

Pustz: "Yes."

Defense Counsel: "And you agreed if you dont collect from Mr. Nash you don't have to repay Miss Cook, is that right?"

Pustz: "Yes, if that's [sic] the terms of the agreement. I don't quite remember all of them."

Defense Counsel: "And you agreed to use and pursue any legal means which are available to you to collect from Mr. Nash, is that right?"

Pustz: "Yes, sir."

Plaintiffs argue that the disclosure of the existence of the two loan agreements prejudiced the jury and prevented them from receiving a fair trial. In support of this argument they cite *De Lude v. Rimek* (1st Dist. 1953), 351 Ill. App. 466, 115 N.E.2d 561, and contend that the trial court should have precluded defense counsel from conducting the section 60 examination of plaintiffs because evidence of such loans is not relevant to the issues of liability and damages.

Nash contends that the loan agreements were nonfinal settlements of plaintiffs' claims because the agreements' finality was contingent upon plaintiffs' continuation of their lawsuit against him and upon satisfaction of any judgment in plaintiffs' favor. He argues, therefore, that *De Lude v. Rimek* does not control the present situation because that case involved a covenant not to sue—a final settlement. Nash further argues that the trial court properly followed the mandate of *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382, when it allowed defense counsel to cross-examine plaintiffs concerning the loan receipt agreements, and he asserts that plaintiffs were sufficiently protected from

any prejudice resulting from this disclosure when the court instructed the jury that it could consider the loans in determining plaintiffs' motives and the credibility to be given their testimony but not as to the issues of liability and damages.

Although we agree that the *De Lude* case differs factually from the present matter, we do not feel that *Reese* is applicable to the issue under consideration.

In *Reese* our supreme court upheld the validity of loan agreements. Although the majority opinion admitted that loan agreements could tend to undermine the adversary nature of the proceedings, it expressed the belief that the remaining defendants could be adequately protected by allowing them to cross-examine certain witnesses as to any possible bias resulting from the loan agreement and by permitting defendant to introduce the loan agreement for consideration by the jury.

However, unlike the present circumstances, it is apparent that only employees of the dismissed defendant were cross-examined concerning the nature of the loan. Regarding this factor, the *Reese* court stated at page 364:

> "It seems not unlikely that, where a defendant has executed a loan-receipt agreement with a plaintiff who thereupon dismissed that defendant and proceeds against the remaining ones, the employees * * * of the dismissed defendant may be substantially more cooperative with plaintiff than would otherwise be true, since any recovery by that defendant of the loaned amount is frequently contingent upon plaintiff's success against the remaining defendants."

Therefore, the only aspect of the credibility of these witnesses that was placed in issue by the existence of the loan was their possible bias in favor of seeing their employer recover the money loaned to Reese.

The same situation is not before us. Here the two plaintiffs were cross-examined about the loan agreements. There was never an employer-employee relationship between Cook and these two individuals. It is evident, therefore, that Casson and Pustz did not have a comparable interest in seeing the host driver recover the money she had loaned to them. For this reason we do not feel that the rationale of *Reese* justifies defense counsel's section 60 examination of plaintiffs.

However, in ascertaining the terms of the two loan agreements we are limited to the testimony elicited during this questioning. This testimony revealed that plaintiffs had to repay the loan if they obtained a verdict against Nash. If plaintiffs failed to collect from defendant, they had the right to retain the money loaned.

Since plaintiffs would be compensated for their injuries either by the loan or by a satisfied judgment against Nash, it is manifest that the two

loans did not constitute additional satisfaction or a "double recovery." Under these circumstances we do not see how the existence of the loan agreements improperly influenced plaintiffs' testimony.

■■ Since the loan agreements did not place plaintiffs' credibility in issue, testimonial evidence of the existence of such loans was not relevant to the issues of liability and damages. Accordingly it was error for the trial court to admit such evidence.

In this situation we feel that the disclosure of these loan agreements had the same damaging effect as the disclosure of a final settlement would have had. It may well have caused the jurors to improperly consider the loans as evidence that Cook was the only party responsible for the collision and injuries suffered by plaintiffs. (See *De Lude.*) The possible prejudicial effect of this error was enhanced when defense counsel in closing argument told the jury that they should consider the fact that Casson and Pustz had already been compensated by the host driver. Since the prejudice caused by the disclosure of the loan agreements was so severe, we do not feel that plaintiffs were adequately protected by the trial court's limiting instruction.

■■ Nash also points out that plaintiffs' lawsuit against the host driver indicates that plaintiffs originally believed Cook to be a negligent party. He asserts that plaintiffs' counsel adduced testimony from Casson to the effect that Cook was acting with due care at all times and argues that this "change in position represents a legitimate area for questioning the plaintiffs' credibility."

When asked by plaintiffs' counsel to describe the manner in which the host driver operated her vehicle in the block preceding the collision, Casson replied that Cook operated the car in her normal fashion. Casson also stated that there was nothing unusual about the way Cook steered her vehicle prior to the accident. On cross-examination defense counsel failed to question Casson regarding this matter.

It is our opinion that the aforementioned statements do not amount to an assertion that Cook was acting with due care at all times. Defense counsel had the opportunity to elicit such an assertion on cross-examination but failed to do so. Furthermore, after carefully examining the original complaint we do not feel that Casson's testimony contradicts any of the complaint's allegations of negligence. Consequently we hold that Nash's argument is without merit.

Plaintiffs claim that they were also denied a fair trial when the trial court refused to admit into evidence a photograph depicting the damage sustained by the right side of Cook's vehicle. Plaintiffs offered three photographs of the host driver's automobile (plaintiffs' exhibits 14, 15 and 16) for the purpose of showing the point of impact with Nash's vehicle and the force of that impact. Photographs 14 and 15 show only the

damage done to the front end and left side of Cook's automobile after it struck the concrete ramp abutment. Photograph 16 depicts the damage to the right side which was directly caused by the force of the collision with Nash's car.

Cook's brother-in-law testified that he took these photographs in the Chicago police automobile pound approximately one week after the accident. The witness stated that he was familiar with the appearance of Cook's vehicle prior to the accident; that photographs 14, 15 and 16 accurately portrayed the host driver's automobile on the day he took the pictures; and that these photographs portrayed the damage to Cook's vehicle as a result of the collision. Counsel for Nash then asked this witness the following questions:

> Defense Counsel: "All right. And, sir, you didn't witness this occurrence did you?"
> Witness: "No, I did not."
>
> * * *
>
> Defense Counsel: "So, you took the photographs of this automobile—what was it—how long after the accident?"
> Witness: "Approximately one week."
>
> * * *
>
> Defense Counsel: "And you have no idea, * * * what happened to this automobile between the time of the occurrence and when you took this photograph?"
> Witness: "No, I can't say that anything would have happened to it between the occurrence and the time that I took the picture."

In closing argument defense counsel referred to the damage depicted by the two photographs admitted into evidence and drew the following inferences:

> "Now, ladies and gentlemen I think the evidence and the testimony in this case is clear that Miss Cook's automobile continued somewhat in a forward movement and after this impact her automobile wasn't pushed to the west—at this° impact her automobile continued ahead and struck an abutment.
>
> And you folks have seen these pictures showing the damage to the front end of her automobile. And also the testimony of * * * [the station attendant] was that Mr. Nash's car was stopped just about at the impact and was spun.
>
> * * *
>
> Considering the testimony of these plaintiffs that their car proceeded in almost a straight direction and hit this abutment and considering the damage that was done to the front end of this car the one that was going fast in this case was Miss Cook who was not here to tell you how fast she was going."

■■ In order to have a photograph admitted into evidence, it is necessary that the photograph be identified by a witness as a portrayal of certain facts relevant to a particular issue and be verified by such witness on personal knowledge as a correct representation of these facts. (*People v. Donaldson* (1962), 24 Ill. 2d 315, 318, 181 N.E.2d 131, 133; *Kooyumjian v. Stevens* (1st Dist. 1956), 10 Ill. App. 2d 378, 388, 135 N.E.2d 146, 151; see 4 Callaghan's Illinois Evidence §8.65 (1964).) A photograph may be verified by the oath of the photographer who took it. (*City of Rockford v. Russell* (2d Dist. 1881), 9 Ill. App. 229, 232-33.) However, it is not necessary to produce the photographer; verification may be furnished by the testimony of any competent witness who has sufficient knowledge to testify that the photograph fairly represents what it purports to portray. *Brownlie v. Brownlie* (1934), 357 Ill. 117, 123-24, 191 N.E. 268, 271-72.

Photographs, when relevant and properly authenticated, are admissible for two distinct purposes: (1) to illustrate the testimony of a certain witness[2] (see *Foster v. Bilbruck* (3d Dist. 1959), 20 Ill. App. 2d 173, 183, 155 N.E.2d 366, 372; 3 Wigmore on Evidence §793 (3d ed. 1940)); and (2) to act as probative or real evidence of what the photograph depicts.[3] (*People v. Bowley* (1963), 59 Cal. 2d 855, 859-61, 31 Cal. Rptr. 471, 474-75, 382 P.2d 591, 594-95.) Specifically, competent photographs may be used to show inanimate objects that cannot be produced in court. See *Lake Erie and Western R.R. Co. v. Wilson.*

■■ Where the appearance and condition of inanimate objects are sought to be shown at a certain time, photographs taken after a material change in such appearance and condition are generally inadmissible. (*Lake Erie and Western R.R. Co. v. Wilson.*) This does not mean, however, that the situation or condition must be precisely the same. It is sufficient if the condition is substantially unchanged (*Moscarelli v. Sheldon* (2d Dist. 1927), 247 Ill. App. 352, 355), or if the things sought to be shown by the photograph remain truthfully represented (*Miller v. Pillsbury Co.* (4th Dist. 1965), 56 Ill. App. 2d 403, 410-11, 206 N.E.2d 272, 275, aff'd, 33 Ill. 2d 514, 517, 211 N.E.2d 733, 735; see *Carroll v. Krause* (2d Dist. 1938), 295 Ill. App. 552, 562, 15 N.E.2d 323, 328-29) or if the photograph is satisfactorily shown to be such an accurate representation that it is immaterial when the photograph was taken. (See *Foster v. Bilbruck.*) Even if there have been substantial changes in appearance,

---

[2] Professor Wigmore contends that a photograph is merely a witness' testimony in illustrated form; a "[p]ictorial communication of a qualified witness who uses this method of communication instead of or in addition to some other method." 3 Wigmore on Evidence §793 (3d ed. 1940).

[3] In Illinois, photographs cannot be admitted for the purpose of acting as real evidence. *Foster v. Bilbruck*; but see *Lake Erie and Western R.R. Co. v. Wilson* (1901), 189 Ill. 89, 95, 59 N.E. 573, 574.

such changes will not necessarily render a photograph inadmissible if it can be shown by testimony that after the changes are explained the jury will be able to clearly understand the photograph as a correct representation and not be misled by it. *Burnett v. Caho* (3d Dist. 1972), 7 Ill. App. 3d 266, 271, 285 N.E.2d 619, 623.

■■ The admissibility of photographs is within the sound discretion of the trial court. (*Department of Public Works and Buildings v. Chicago Title & Trust Co.* (1950), 408 Ill. 41, 52, 95 N.E.2d 903, 909, *cert. denied* (1951), 341 U.S. 931, 95 L. Ed. 1360, 71 S. Ct. 804.) However, since it is generally recognized that photographs have a greater influence on the jury than oral testimony (*Kooyumjian v. Stevens*), a reviewing court will examine the record to determine whether the admission in evidence of a certain photograph was carefully considered by the trial court and whether in light of the circumstances presented to that court there was or was not an erroneous abuse of discretion. *Darling v. Charleston Community Memorial Hospital* (4th Dist. 1964), 50 Ill. App. 2d 253, 321, 200 N.E.2d 149, 183, *aff'd*, 33 Ill. 2d 326, 211 N.E.2d 253 (1965), *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204.

■■ Since plaintiffs failed to produce a witness who viewed Cook's vehicle immediately after its collision with Nash's car, a proper foundation for the three photographs as illustrations of that automobile's damaged condition on January 25, 1972, was not established. Without such a witness there was no one who could competently testify that the photographs, although taken approximately one week after the accident, accurately depicted the damage caused by the collision or that they portrayed the host driver's car in a substantially unchanged condition. Furthermore, if the automobile's appearance was altered during the one week interval, there was no one who could explain these changes to the jury.

Cook's brother-in-law could not supply this needed testimony because he did not witness the accident or view Cook's vehicle immediately afterward. All he could do as the photographer was verify that the three photographs were truthful representations of what the host driver's car looked like at the time he took the pictures.

However, we do not feel that this verification alone is sufficient enough to justify the admission of photographs 14 and 15 into evidence. Under this foundation the two photographs are not relevant or material to the issues of liability and damages in the present case because it is possible that the automobile suffered additional damage when it was removed to the police pound. Photographs 14 and 15 would have been relevant only if they were supported by credible testimony which asserted that the host driver's car sustained no added material damage during the intervening

period or which explained any changes that had taken place. Since plaintiffs failed to produce such testimonial evidence, it is our opinion that the trial court erred in admitting these photographs.

Although this error was not damaging by itself, plaintiffs were prejudiced by the court's decision not to admit photograph 16 into evidence. This ruling could have created a misunderstanding in the minds of the jurors in that it gave the incorrect impression that only the front portion of Cook's vehicle suffered extensive damage. Also, defense counsel in his closing argument used photographs 14 and 15 to draw the improper inference that the host driver's car was the only vehicle traveling at an excessive rate of speed prior to the collision. It is evident that this inference could not have been made if photograph 16 had been admitted with the other two photographs.

Defendant calls attention to the fact that it was the plaintiffs themselves who offered photographs 14, 15 and 16 into evidence, and he argues that plaintiffs should not be allowed to contend on appeal that they were prejudiced because it is well established "that a party cannot complain of a situation which he himself has created."

We agree with this principle of law. However, as was stated above, the prejudice to plaintiffs was directly occasioned by the trial court's decision to admit photographs 14 and 15 without photograph 16. It was not caused by plaintiffs' act of offering the three photographs for admission into evidence. Plaintiffs are, therefore, entitled to raise the trial court's ruling on appeal.

After carefully examining the record, we feel that the cumulative effect of the trial errors made in relation to the loan agreements and the three photographs of Cook's automobile deprived plaintiffs of a fair trial.

It is, therefore, unnecessary for this court to consider the third and fourth assignments of error raised by plaintiffs in this appeal since this cause must be reversed for the aforementioned reasons. Accordingly the trial court's judgment in favor of Nash is reversed, and the cause is remanded for a new trial consistent with the views expressed in this opinion.

Reversed and remanded.

DOWNING, P. J. and STAMOS, J., concur.